# J. S. DICKSON ET AL. v. ALFRED HOLLISTER.

## ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued November 1, 1888—Decided January 7, 1889.

1. A property owner maintaining a coal-hole in a city sidewalk, is bound to know that persons will pass and repass and step upon the cover, not only in the day time but in the night time, without apprehending danger; and he is therefore held to care and diligence in keeping it secure.

2. To charge the owner of the premises with notice of its condition, in order to affect him with negligence, it is not necessary that the defect should be so notorious as to be evident to all pedestrians passing in the immediate neighborhood.

3. As the cover is placed in the sidewalk, as part of it, for persons to tread upon, a passer-by is not chargeable with contributory negligence for failing to exercise such critical care as would involve an examination of its structure and adjustment, before stepping upon it.

4. If the owner employ a blacksmith to adjust and secure the cover over the coal-hole, the blacksmith, being subject to the direction and control of his employer and liable to be dismissed at any time, is not an independent contractor for whose negligence the owner would not be liable.

5. Where, in a wound received through the alleged negligence of the defendant, erysipelas supervened in a few days, the disease resulting from occult causes, not attributable to treatment, improper habits, or constitutional tendencies, it was not error to charge that even if the erysipelas was not the immediate result of the injury, it might nevertheless be regarded as part of the injury itself.

Statement of Facts.

Before Gordon, C. J., Paxson, Sterrett, Green, Clark, Williams and Hand, JJ.

No. 32 October Term 1888, Sup. Ct.; court below, No. 407 March Term 1887, C. P. No. 1.

On February 7, 1887, a summons in case was served in an action by Alfred Hollister against Dr. John S. Dickson and Sarah Dickson, his wife, to recover damages for personal injuries received through the alleged negligence of the defendants. Issue.

At the trial on November 17, 1887, the facts appearing in evidence were substantially as follows:

On April 10, 1886, the plaintiff, a resident of Utica, New York, was in Pittsburgh, as a traveling salesman for a drug house in New York city, and in the afternoon of that day when passing in front of property belonging to the defendants on Ninth street, in the pursuit of his business, he stepped upon the grating which covered a coal-hole in the foot way. The grating was displaced by his step upon it, and turned or slipped away, whereby the plaintiff fell into the coal-hole to his arm-pits, receiving a severe injury upon his right leg below the knee. He was confined to his bed at the St. Charles Hotel for two months, under treatment, and was off duty for still another month. Erysipelas supervened during his confinement. His testimony, as to the occurrence resulting in his injury sufficiently appears in the charge of the court below and in the opinion of this court. Dr. Orr, his physician, testified that the erysipelas set in on the sixth or seventh day; that erysipelas frequently though not usually followed wounds, but if there had been no wound there would have been no erysipelas. Other witnesses were called by the plaintiff to prove his injuries, the resultant suffering and the expenses incurred, when he rested.

The defendants called Thomas Johnson, an employee of the defendants who had charge of the building in front of which the injury occurred, and who testified that the coal-hole was not in use at the time, and he had secured the grating in its place by a strong wire through the bars fastened to piece of wood; "When I discovered it worked loose so often, I spoke to the Doctor about having it fixed some other way; he told

me to have it fixed as I thought best;" the witness then went to M. J. Farrell a blacksmith and had him fix the grating by putting clamps on it.

M. J. Farrell testified that he had been a blacksmith for thirty years; that he went and examined the grating, and though he thought it unnecessary he put on the clamps as a matter of caution. Other witnesses called by the defendants testified that the grating was amply secured.

In his rebuttal, the plaintiff called H. M. Wilson, a civil engineer, who testified to an examination of the coal-hole made by him and that the flanges of the opening had been so worn away by the throwing in of coal that the grating could no longer be made secure.

At the close of the testimony, the court, STOWE, P. J., charged the jury:

The main features of this case are not controverted. I have no doubt you will believe from the evidence that Alfred Hollister, the plaintiff, in going along the pavement on Ninth street, below Penn, in the pursuit of his ordinary and proper business, stepped upon this grating, or at all events where the grating ought to have been; I presume it was partially in place, at least; that it gave way, or slipped out of place, and he fell in the manner he describes, and the little boy, Richard Dickson, also describes, and received the injury he complains of here.

[There is no evidence to indicate, nor is it pretended on the part of the defendants, that the plaintiff was guilty of any negligence himself. There is some sort of an intimation, and that is indicated only by the testimony of little Richard Dickson, that the plaintiff may have been intoxicated at the time; but even if he had been drinking beer or liquor, or even if he were intoxicated, if that drinking or intoxication did not tend to bring about the accident, did not tend to the loosening up of this grating, or cause the plaintiff to step upon it, when he otherwise ought to have stepped somewhere else, as the evidence fails entirely to indicate, it does not make any difference. The injury he received would have no connection with his being intoxicated, even if he were, which, it seems to me, the evidence entirely fails to show, and therefore there is nothing

Charge of Court below.

which would justify the jury in finding he was guilty of what we call contributory negligence.] [1]

Then the question arises, and it is the whole question apparently in this case, whether the defendants exercised due and proper care in arranging this grating, and seeing if it were made properly originally; that it was kept in proper shape so as to protect persons who had a right to pass along there. Parties who make holes in the pavement know, and are bound to know, must know, as everybody else does, that if the covers are not kept solidly in place, somebody may fall through and get hurt, and they are therefore bound to exercise all reasonable skill, care and prudence with reference to the possible injury that may occur to persons passing along the street. Of course, they are not insurers, but they are bound to exercise such a degree of mechanical skill in arranging the openings as would be ordinarily proper and necessary to protect travelers in view of what might occur. If the defendants did everything in arranging or having arranged, this grating, that was prudent and cautious, in view of these circumstances, they are not liable here, without they have neglected in some way or other to keep the grating in proper order and repair; and when I speak of the defendants I speak of the man Johnson, who had charge of the grating, because the defendants are responsible for the neglect of Johnson. If the defendants put the charge of this grating in the hands of Johnson, gave him authority to look after it, and Johnson neglected his business, and the plaintiff was hurt, it was the same in legal effect as if the defendants had kept charge of it themselves. Johnson says that before he had these flanges put upon it, the grating got out of order from time to time, and his attention was attracted to it, and he had wired it down in some way, but it still kept getting out of shape, so as to indicate it might become dangerous. [He then went to the gentleman who fixed it, Mr. Farrell, I believe, and had these flanges, or ear pieces, put on. Farrell says they were not at all necessary; that the grating was sufficient before. In that he is probably mistaken, because the evidence of Johnson himself shows that it was getting out of order. But at any rate, they were put on as a matter of extra precaution, and Farrell says in his opinion it was perfectly safe. Now, if they did make the grating safe, in so far as ordinary skill, prudence

Charge of Court below.

and foresight could anticipate any possible or probable damage arising from it, that is all the defendants are bound to do, and they are not liable for an accident of this kind; but because they sent to a man they thought skilful, and engaged him to do the work, it does not necessarily follow that they are not liable. It must be established reasonably to the satisfaction of the jury, that the man employed did the work in a proper and reasonable way, such as would be proper and sufficient protection under the circumstances. I cannot relieve myself of a duty I owe to the public by employing a man I think is competent to do the work. I must go further, and prove that when he did it, he not only did the work to the best of his judgment, or the best of my judgment, but did it in a way which was reasonable and proper in the judgment of the jury, under all the circumstances of the case.] [2] I may think a man is competent to do a certain piece of work, and he may make me a very bad job, and by his bad work somebody may be injured. I cannot avoid my liability in a case of that kind where I owe a duty to the public, by showing I have exercised the best judgment I had. If that were not the law I would be imposing somebody between me and the public when a duty devolved on me. I am responsible, in a case of that kind, for the neglect, or want of skill, of the party I employ.

The defendants request the court to charge [inter alia]:

3. If the defect in the coal-hole covering as a lawful structure be occult, or the result of a wrongdoer's act, either express notice of the defect must be brought home to the defendants and a failure on their part to heed said notice, or, the defect must be so notorious as to be evident to all pedestrians passing in the immediate neighborhood, before the plaintiff can recover.

Answer: Refused.[4]

4. To entitle the plaintiff to recover, it must be established by affirmative proof that the defendants were guilty of an omission of duty consisting in their not having taken reasonable precautions to render the coal-hole covering safe, upon notice of the defective condition of said coal-hole covering.

Answer: Refused.

5. If the jury believe that the defendants employed a person skilled in repairing iron work, who put on the rim of the coal-

Charge of Court below.

hole covering the iron plates or clamps, and who expressed his belief that the presence of the iron clamp would prevent any accident to a person passing along the pavement and stepping upon the coal-hole covering, the defendants took reasonable and proper precautions in that instance, and they cannot be charged with negligence.

Answer: Refused. It is very strong evidence of proper care on part of defendants, but not absolutely conclusive.

The question, after all, is not merely whether defendants thought the grating secure, but whether in fact it was so arranged as to fully indicate, to a reasonably skilful and cautious man having proper knowledge of such contrivances and the dangers incident to their use, that it was safe to pedestrians.[5]

\*  \*  \*  \*  \*  \*  \*  \*

As to the damages, the rule has been properly stated by Mr. Marshall. First, the plaintiff, if he is entitled to recover at all, is entitled to recover his actual expenses. That involves doctors' bills, medicine, nursing and hotel bills. That is the money this accident has actually cost him. He is entitled to receive that, if he is entitled to recover. Then he is also entitled to recover the value of his lost time; that is, what he would have made during the time he was laid up. These things can be easily computed. He gives three months as the time he was disabled absolutely, and he rates the value of his time at $100 a month—says that is the average sum he could have made. If that is so you can arrive at the amount with some degree of certainty. Then there is another element of damage—compensation for pain and suffering he has undergone; that is a matter we have to keep suggesting to juries in cases of this kind, that is to be governed by the judgment of the jury itself. There is not of course, any standard by which we can weigh human suffering; there is no manner, indeed, in which we can tell the degree of suffering a man endures. [The fact is, one man may endure pain better than another one; may endure more pain with a similar injury; but that there is suffering and pain incident to all such injuries as this, is manifest not only to physicians, but to everybody; and the evidence in this case is that the pain was very severe, especially after erysipelas set in. As to that, if the erysipelas would not

have occurred if the injury had not happened, it is to be considered by the jury as part of the injury itself, to be compensated for in some way.] [3]

The jury returned a verdict in favor of the plaintiff for $1,325. Judgment having been entered, the defendants took this writ, assigning as error:

1-3. The parts of the charge embraced in [ ] [1 to 3]
4, 5. The refusal of the defendants' points. [4] [5]

*Mr. D. T. Watson* and *Mr. A. H. Clarke,* for the plaintiffs in error:

1. The court instructed the jury, in effect, that there was no evidence on which they could find the plaintiff guilty of contributory negligence, and thus withdrew this question from their consideration. Contributory negligence was disclosed by the testimony of the plaintiff himself: " I was going along and I stepped on this coal-hole cover, it went out in front of me and I went in; . . . . . It was done so quickly, I couldn't tell how it went out," etc. The action of the court was therefore clearly erroneous: Easton Bor. v. Neff, 102 Pa. 478; Howard Express Co. v. Wile, 64 Pa. 201. The degree in which the plaintiff contributed to the accident is unimportant: Monongahela City v. Fischer, 111 Pa. 9; Lehigh V. R. Co. v. Greiner, 113 Pa. 600.

2. That a person employing an independent contractor, whose business it is to do certain work, is not liable for loss or injury resulting from imperfect work if he exercise no supervision or control over the contractor, has been repeatedly ruled and hardly needs authority to support it: Chartiers V. Gas Co. v. Lynch, 118 Pa. 370; Ardesco Oil Co. v. Gilson, 63 Pa. 151. In the latter case it was said: " It may be considered as now settled, that if a person employ others, not his servants, but mechanics and contractors in an independent business, and they are of good character, he incurs no liability for injuries resulting to others from their negligence or want of skill." The question was considered at length in Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 185.

3. The judge too broadly charged the jury that if erysipelas would not have occurred unless the accident had happened,

then the plaintiff was entitled to recover for the suffering from the erysipelas, as if it were a part of the original wound. This wholly eliminated from the case the question of intervening causes, and withdrew the question of fact as to whether the wound directly and solely caused the erysipelas. If the wound were a part of the cause of the erysipelas, and yet there were intervening causes without which erysipelas would not have set in, then the defendants were not liable. The defendants were only liable for the probable consequences of their own negligence, and not for intervening causes subsequent to the injury.

4. The defendants' third point was based upon the ruling of this court in Rapho Tp. v. Moore, 68 Pa. 404. Farrell, although he considered the covering of the coal-hole sufficient, yet added the clamps to keep the grating in its place more securely. There is no evidence to show that the covering was out of order or dangerous after the clamps were added. And if the coal-hole as fixed was dangerous, it was a latent defect, and one of which the defendants had no notice.

*Mr. Thomas M. Marshall, Jr.*, and *Mr. A. M. Imbrie*, for the defendant in error:

1. The question of contributory negligence was not raised in the argument of the case in the court below, nor was it raised in the defendants' points presented. Nor was there evidence tending to prove contributory negligence. The doctrine of independent contractor has no application. The language of the court excepted to, is the best answer to the third assignment of error: "If the erysipelas would *not* have occurred if the injury had not happened, it is to be considered by the jury as part of the injury itself."

2. To have affirmed the planks in the platform of the fourth assignment of error would have been gross error. That the condition of the coal-hole must have been so notoriously defective as to attract the attention of persons passing by, before the owner would be held responsible is a startling proposition. We submit that owners who place a convenience for their property upon a traveled street should be held to know more about its condition than a pedestrian passing in the immediate neighborhood.

OPINION, MR. JUSTICE CLARK:

This suit was brought to recover damages for a personal injury sustained by the plaintiff from falling into a coal-hole in front of defendant's premises on Ninth street in the city of Pittsburgh, on April 10, 1886. The opening was in the sidewalk of a public street in a populous and much frequented portion of the city, and was used for the defendant's private convenience. It was his duty, therefore, to exercise reasonable care and diligence, not only in making, but in keeping it safe and secure. He was bound to know that persons would pass and repass on this pavement not only in day time, but in the night time also, and that as the opening was in the centre of the sidewalk, they would, without apprehending danger, step upon the cover which he placed over it. It is quite certain that this cover was not secure, or it would not have turned, and the jury has found that its insecure condition was owing to the defendant's want of due diligence and care concerning it. It is absurd to say that in order to charge the owner of the premises with notice, "the defect must be so notorious as to be evident to all pedestrians passing in the immediate neighborhood." Whether the cover was made and adjusted in a way that was reasonably safe and secure, was for the jury, and that question was fairly submitted.

Was the plaintiff guilty of contributory negligence? Upon a careful examination of the whole case we find no evidence to justify any such inference. The following extracts from the testimony of Mr. Hollister are quoted and relied upon as tending to show contributory negligence on his part. He says:

"The pavement was apparently all right; I was going along and I stepped on this coal-hole cover, which went out in front of me and I went in. It was done so quickly I could not tell how it went out; it either slipped from not being properly placed on, or else it turned, one of the two."

"Q. Did you notice this coal-hole covering at all before you stepped on it? A. I noticed it as any man would notice anything along the street.

"Q. Was there anything apparently wrong with it? A. No, sir; it was apparently all right, or I should not have stepped on it.

"Q. So far as you could tell it was resting properly in the

rim that supported it?   A. I don't look down to know that in regard to every coal-hole I come to.

"Q. If it had been displaced you probably would have noticed it?   A. I might have noticed it, and might not; it is evident I did not notice it; it is evident it was displaced, and I did not notice it.

"Q. Of course you have no knowledge of it further than that it let you down?   A. That is all.   I looked at it as it lay there to see what had been the cause of my going in there, and found—I saw there were pieces attached to it; little pieces of iron—three of them, I think, attached to the side of it; the front side had none attached, and it was the front side, towards Penn avenue, I stepped on; my impression was it was slightly displaced, and as I stepped on it it revolved on these two places and went in front of me and let me in."

It is the duty of every pedestrian upon a public highway to use reasonable care for his own safety and to avoid an open or apparent danger.   But as the cover was placed in the pavement as a part of it, for persons to tread upon, it is plain that Hollister was not bound to exercise that critical and extreme care which would involve a particular examination of its structure and adjustment before stepping upon it.   He had a right to assume that not only the public but private owners had performed their duty, unless there was something reasonably apparent to give him notice or cause some apprehension of danger, when, of course, a greater degree of care would be required, and there is not the slightest proof that he had any such warning.

Farrell was not an independent contractor; he was a mere servant; he was subject to the direction and control of Dickson, and might have been dismissed and another person employed at any stage of the work.

Although, according to the testimony of the medical experts, erysipelas is not a necessary consequence of such an injury, yet it is conceeded that in frequent instances it does follow flesh wounds.   The causes which produce erysipelas would seem to be obscure; the modern theory is that erysipelas is the result of some specific poison, which enters the system through the exposure of a wound; but the nature of this poison and the conditions under which it operates, are not well understood.   The disease was, however, a development which

might fairly have been anticipated as a result of the injury; and as in this instance the disease developed in the wound, it was a reasonable inference of the jury that if there had been no wound there would have been no erysipelas. There is no intimation that erysipelas intervened from any want of care or skill on part of Dr. Orr, or that proper precautions were not taken by the use of antiseptics, etc., in the treatment of this wound. On the contrary, it is conceded that the disease, if not the necessary and usual result, frequently occurs in such cases. The negligence of the defendant may therefore be regarded not only as the direct cause of the wound but of the disease, which from occult causes, not attributable to treatment, improper habits, or peculiar constitutional tendencies, frequently develops from personal injuries. It was in this view of the case the court instructed the jury that even if the erysipelas was not the immediate result of the injury it might nevertheless be regarded by the jury as part of the injury itself. Nothing intervened to produce this disease other than might have been fairly anticipated as the direct, although not the necessary result, of the injury; as well might we attribute the contact of the atmosphere or the microscopic existences therein as an intervening cause in such cases.

Upon an examination of the whole case we find no error, and the judgment is affirmed.

