FIRST NAT. BANK OF WARREN v. BARNEY J. GILLEN.

COAL VAULTS UNDER SIDEWALKS.

Where a person, who owns and occupies a building, permits a perforated covering over a coal vault, constructed under a sidewalk in a municipality and maintained for his own benefit, to remain unfastened below, and the same can be easily displaced by lifting the same from the rim in which it is placed either by inadvertence or design and it is so displaced, and a footman lawfully walking upon the sidewalk after dark, steps upon the covering after it is displaced which tilts and throws him into the coal hole, thereby seriously injuring him: Held, that such owner is guilty of negligence although such covering would not be displaced by ordinary travel over it, and that such negligence is the proximate cause of the injury.

ERROR to Trumbull common pleas court.

**T. H. Gillmer** and **C. M. Wilkins,** for plaintiff in error.

**E. B. Taylor** and **Gillmer & Gillmer,** for defendant in error:

*Lake Shore & M. S. Ry.* v. *Elyria,* 69 Ohio St. 414 [69 N. E. Rep. 737]; *Ravenna* v. *Pennsylvania Co.* 45 Ohio St. 118 [12 N. E. Rep. 445]; *Zanesville* v. *Fannan,* 53 Ohio St. 605 [42 N. E. Rep. 703; 53 Am. St. Rep. 664]; *Elster* v. *Springfield,* 49 Ohio St. 82 [30 N. E. Rep. 274]; *McIlvaine* v. *Wood,* 12 Dec. Re. 384 (2 Han. 166); *Clark* v. *Fry,* 8 Ohio St. 358 [72 Am. Dec. 590]; *Southern Ohio Ry.* v. *Morey,* 47 Ohio St. 207 [24 N. E. Rep. 269; 7 L. R. A. 701]; *Railway* v. *Walrath,* 38 Ohio St. 461 [43 Am. Rep. 433]; *Iron Ry.* v. *Mowery,* 36 Ohio St. 418; Lan. R. L. 10301 (R. S. 6710); *Calder* v. *Smalley,* 66 Iowa 219 [23 N. W. Rep. 638; 55 Am. Rep. 270]; *Congreve* v. *Smith,* 18 N. Y. 79; *Irvine* v. *Wood,* 51 N. Y. 224 [10 Am. Rep. 603]; *Clifford* v. *Dam,* 81 N. Y. 52 [41 Am. Rep. 358]; *Wenzlick* v. *McCotter,* 87 N. Y. 122; *Dickinson* v. *New York,* 92 N. Y. 584; *Nolan* v. *King,* 97 N. Y. 565 [49 Am. Rep. 561]; *Wolf* v. *Kilpatrick,* 101 N. Y. 146 [4 N. E. Rep. 188; 54 Am. Rep. 672]; *Morris* v. *Woodburn,* 57 Ohio St. 330 [48 N. E. Rep. 1097]; *Wilhelm* v. *Defiance,* 58 Ohio St. 56 [50 N. E. Rep. 18]; *Loeser* v. *Humphrey,* 41 Ohio St. 378 [52 Am. Rep. 86]; *Dickson* v. *Hollister,* 123 Pa. St. 421 [16 Atl. Rep. 484; 10 Am. St. Rep. 533].

**COOK, J.**

Plaintiff in error is the owner of a bank building situated on South Park avenue running along the public square and one of the most public streets in the city of Warren. The bank had a coal vault five feet deep under the sidewalk, but it had not used it for at least ten years. The entrance to this vault from the outside was by means of an opening in the middle of the sidewalk. The opening was covered by a circular iron covering known as a grate covering twenty inches in diameter and one inch thick. This grate covering rested on an iron rim and had an iron rod with a hook attached running down through the center for the purpose of fastening it below in the vault, but had never been so fastened. It fitted loosely in the rim and could be easily displaced, so it would tilt either by lifting it or by the catching of a pedestrian's cane or umbrella in it, but it would not be displaced by ordinary travel over it. There were a large number of openings to coal vaults in the city covered in the same manner at the time of the accident and had been for years previously as well as in cities of the same size in different parts of the country; while many grate coverings were fastened below, and some openings were covered with large solid covers that fit closely into the rims. The proper authorities of the city had full knowledge of the existence of the vault and the cover, but no permit or license was obtained to construct and maintain it by the owner of the property.

About 8 o'clock in the evening of April 28, 1900, after dark, defendant in error, Barney J. Gillen, was lawfully walking along Park avenue; he stepped upon the covering, it tilted and he fell into the opening to the vault and was very seriously injured. About ten minutes before the accident the cashier of the bank in coming from the building passed over the covering and stepped upon it, without any signs of it being displaced, and after the accident the rim and covering were in good condition, showing almost conclusively that the covering had been slightly displaced by some means immediately previous to the accident, but by what means the evidence wholly fails to show.

The only error relied upon in argument for the reversal of the judgment is that the verdict is clearly against the weight of the evidence, and the only question therefore is, was the jury justified in drawing the inference of negligence on the part of the bank from the facts stated, as there is no claim of negligence on the part of Gillen.

The question is a very important one, as in almost all cities of the size of Warren there are scores of coal vaults similarly covered.

Conceding that in this state an abutting owner of a lot has author-

ity to excavate under a sidewalk and construct and maintain a coal vault for his own benefit alone, about which there may be some question, yet what is his duty to the public when he does so? The sidewalk is primarily for the benefit of the public. It is especially for the use of the resident of the city when walking, and he has a right to assume that no stumbling block or trap has been placed in the centre of the walk. By day and by night he is justified in assuming that the centre of the sidewalk is clear of all obstructions or pit falls. If the owner of abutting property makes use of it for his own convenience by excavating under it, he must see to it that the sidewalk is in as substantially safe condition as if no excavation had been made. Such, no doubt, is the law upon principle and as we understand it, such is the tenor of the best authorities.

In Dillon, Munic. Corp. Secs. 1032 and 1033, it is said:

"Section 1032. No person, not even the adjoining owner, whether the fee of the street be in himself or in the public, has the right to do any act which renders the use of the street hazardous or less secure than it was left by the municipal authorities. Whoever does so, whether by excavations made in the sidewalk by the abutter, or by unsafe hatchways left therein, or by opening, or leaving open, an area way in the pavement, or by undermining the street or sidewalk, or by placing unauthorized obstructions thereon, which make the use of the street unsafe or less secure, is guilty of a nuisance, and is liable to any person who, using due care, sustains any special injury therefrom; and in such cases, the person who created or continues the nuisance is thus liable, irrespective of the question of negligence on his part."

"Section 1033. In accordance with the principles stated in the preceding sections, the owner of a building and lot is liable for personal injuries sustained by the breaking of a flagstone, or defective grating forming part of the sidewalk adjoining the building and covering an excavation made in the sidewalk, and used by the owner for private purposes. It follows that it is no answer to such an action, that the work, including the defective covering, was done for the owner at a fixed price by contractors, who agreed to do it properly. The doctrine of *respondeat superior* has no application to such a case. And because the owner is bound, at his peril, to keep the excavation covered so as to be as safe as if it had not been made, he is not discharged from liability by the fact that, having provided a sufficient covering, it was, without his knowledge, fractured or rendered unsafe by the wrongful acts of others."

The doctrine of the text is supported by many authorities and the

author well says, in commenting upon the case of *Fischer* v. *Thirkell,* 21 Mich. 1 [4 Am. Rep. 422], which dissents from these authorities:

"Since such excavations are made for the exclusive benefit of the owner of the building the author sees nothing unreasonable in the doctrine that he is bound to see that they are kept in repair, and do not become nuisances by becoming dangerous." See also Dillon, Munic. Corp. Sec. 700.

It is, however, not necessary in this case to go to the extent of holding that the bank should be held responsible for maintaining a nuisance and therefore guilty of a wrong, it having no right whatever, implied or otherwise, to make or maintain the vault, and the trial court instructed the jury that the defendant would only be liable for the want of ordinary care in constructing and maintaining the covering over the hole and that if ordinary care was used in the construction and maintenance of the covering, they should find for the defendant. The jury found that the bank did not exercise such care as it should have done, and certainly that was a question of fact to be determined by the jury, if an inference of negligence could be drawn from the facts. *Dickson* v. *Hollister,* 123 Pa. St. 421 [16 Atl. Rep. 484; 10 Am. St. Rep. 533].

Ordinary care in a case of this character would be great care. This coal hole was in the centre of the pavement. The owner is bound to know that persons will pass and repass and step upon the cover, not only in the daytime but the nighttime, without apprehending danger.

"If the excavation is by license of competent authority, the one making it is bound to do it in a careful manner, and to see that it is properly and carefully covered, so as to make the street as safe for passage as before." *Irvine* v. *Wood,* 51 N. Y. 224 [10 Am. Rep. 603].

"The public are entitled to an unobstructed passage upon the streets, including the sidewalks of a city." A coal hole covered with a movable disc is an obstruction. "When permission is given by a municipal authority to thus interfere with a sidewalk, solely for private use and convenience, the person obtaining the permission must see to it that the street is restored to its original safety and usefulness." *Clifford* v. *Dam,* 81 N. Y. 52.

Many other authorities could be cited, but it is unnecessary to do so as in our own state substantially the same doctrine was declared in the case of *Morris* v. *Woodburn,* 57 Ohio St. 330 [48 N. E. Rep. 1097], in which it is held:

"If the owner of a lot abutting upon a street of a municipality, for the use of his property, constructs a vault under the sidewalk over which he negligently places and maintains a defective covering, he is liable

Bank v. Gillen.

directly to a footman injured thereby, notwithstanding the omission by the municipality of the duty imposed upon it by statute to keep the street in repair."

In the opinion it is said, page 335:

"The liability of the owner of the abutting property for an injury resulting from torts of this character, notwithstanding the omission of duty by the municipality, is necessarily implied in *Clark* v. *Fry*, 8 Ohio St. 538, and *Railway* v. *Morey*, 47 Ohio St. 207, although the precise question may not have been raised."

But it is claimed that the act of the bank in having such character of covering and its not being fastened below was not the proximate cause of the injury to Gillen. Indeed that is the principal contention of counsel. It is said that the covering was sufficient to protect foot travelers; that by walking over it the covering would not be disturbed, and that it must have been interfered with by some means immediately prior to Gillen stepping upon it, and that this intervening act of some one, either by inadvertence or intentionally, was the direct cause of the injury.

It must be borne in mind that it is not every intervening cause that relieves the defendant from his negligence. If the negligence of the defendant is the primary cause of the injury and the intervening cause was one that in the natural and ordinary course of things should be contemplated as not entirely improbable, then the defendant is not relieved. The rule is plainly and well stated in Shearman & Redfield on Negligence, commencing at Sec. 32.

"Section 32. The connection between the defendant's negligence and the plaintiff's injury may be broken by an intervening cause. In order to excuse the defendant, however, this intervening cause must be either a superseding or a responsible cause. It is a superseding cause, whether intelligent or not, if it so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in the slightest degree, produces the injury. It is a responsible one, if it is the culpable act of a human being, who is legally responsible for such act. The defendant's negligence is not deemed the proximate cause of the injury, when the connection is thus actually broken by a responsible intervening cause. But the connection is not actually broken, if the intervening event is one which might, in the natural and ordinary course of things, be anticipated as not entirely improbable, and the defendant's negligence is an essential link in the chain of causation. Of course, the very definition of a superseding

cause implies that the defendant's negligence cannot be the cause of the injury.

"Section 33. The first alternative needs little comment. It is simply the case of inevitable accident, which has already been considered, with only this difference, that such accident occurs after the defendant has been negligent, and when, perhaps, but for the intervention of that accident, he might have been liable. But it must be carefully noted that inevitable accident, in order to furnish a complete defense in such a case, must be the sole cause of the injury, and therefore that it is no defense, if, but for the defendant's negligence, the plaintiff would not have been exposed to injury from such accident; while, if it contributed to any part of the resulting damage, it is only a defense, in case that part of the damage can be accurately distinguished from the rest.

"Section 34. The second alternative, of a responsible but not superseding cause, needs further statement. If the negligent acts of two or more persons, all being culpable and responsible in law for their acts, do not concur in point of time, and the negligence of one only exposes the injured person to risk of injury in case the other should also be negligent, the liability of the person first in fault will depend upon the question whether the negligent act of the other was one which a man of ordinary experience and sagacity, acquainted with all the circumstances, could reasonably anticipate or not. If such a person could have anticipated that the intervening act of negligence might, in a natural and ordinary sequence, follow the original act of negligence, the person first in fault is not released from liability by reason of the intervening negligence of another. If it could not have been thus anticipated, then the intervening negligent person alone is responsible."

This rule is adopted and approved in *Pennsylvania Ry.* v. *Snyder,* 55 Ohio St. 342 [45 N. E. Rep. 559; 60 Am. St. Rep. 700], and was previously approved in many cases in this state.

Can it be said that the intervening event or cause in this case was not one which might in the natural and ordinary course of things have been anticipated as entirely probable? Should not the bank have anticipated that this covering, which could so easily be displaced as to make it absolutely dangerous, would be so displaced by the ordinary use of a walking stick or umbrella, by a wholly irresponsible child, or by a burglar seeking an entrance into a bank?

Assuming that the covering was displaced by a responsible person maliciously, of which there was no proof, and certainly the burden was on the bank to show that to be the fact, *Clifford* v. *Dam, supra,* yet we

do not think the bank could claim anything from that fact, for, as said by Shearman & Redfield, Negligence Sec. 34, already referred to: "If the negligent acts of two or more persons all being culpable and respon- sible in law for their acts, do not concur in point of time, and the negligence of one only exposes the injured person to risk of injury in case the other should also be negligent, the liability of the person first in fault will depend upon the question whether the negligent act of the other was one which a man of ordinary experience and sagacity, ac- quainted with all the circumstances, could reasonably anticipate or not."

Should not the bank have reasonably anticipated that some person might remove the covering either from curiosity, or maliciously for the express purpose of causing injury, or for the purpose of committing a burglary? We think it should have so anticipated.

This rule is fully illustrated in the cases referred to in *Harriman* v. *Railway,* 45 Ohio St. 11 [12 N. E. Rep. 451; 4 Am. St. Rep. 507], where in the opinion it is said, page 32:

"And, indeed, since the leading case of *Lynch* v. *Murdin,* 1 Q. B. 29, there is an almost unbroken line of authorities to the effect that such intervening cause cannot affect the liability of the negligent party.   *   *   *

"In *Illidge* v. *Goodwin,* 5 C. P. 192, the defendant's horse and cart were left standing in the street, without anyone attending them. A person came along and whipped the horse, which caused it to back the cart against the plaintiff's window. It was urged that the man who whipped the horse, and not the defendant, was liable   It was also con- tended that the bad management of the plaintiff's shop man had con- tributed to the injury.   But Tindal, C. J., ruled that even if this were believed, it would not avail as a defense.   'If,' he says, 'a man chooses to leave a cart standing on the street, he will take the risk of any mis- chief that may be done.' "

"One who leaves a horse loose and unattended in a city street is responsible for injuries done by the horse running away, although that might not have happened but for the wrongful act of a stranger in frightening it, and though after the horse began to run, the owner did his best to stop it.   So also the owner of any machine, or other thing capable in its nature of doing injury is liable for injury which ensues to a person, not himself careless, in consequence of the owner negligently leaving it exposed and unguarded in a public place, and its being there set in motion by a negligent person."   Shearman & Redfield, Negligence Sec. 35, and cases cited in the notes.

What difference is there between leaving a horse unhitched in the street and leaving this covering in the middle of the sidewalk unanchored? None whatever.

In the opinion in *Harriman* v. *Railway, supra,* it is said, page 35:

"In the latter case, *Lane* v. *Atlantic Works,* the defendant carelessly left a truck loaded with iron on a public street in Boston. The iron was so negligently placed on the truck that it would easily fall off. The plaintiff, a boy seven years old, was walking along the street, when he was called by another boy twelve years old, to come over and see him move the truck. The plaintiff went over and stood near the truck while the other boy was attempting to move it. In consequence of the motion thus given the truck by the other boy, the iron rolled off and injured the plaintiff's legs. Colt, J., in the opinion of the court, disposes of the question now under consideration as follows: 'In actions of this description the defendant is liable for the natural and probable consequences of his negligent act or omission. The injury must be the direct result of the misconduct charged. But it will not be considered too remote, if according to the usual experience of mankind the result ought to have been apprehended. The act of a third person intervening and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrongdoer, if such act ought to have been foreseen. The original negligence still remains a culpable and direct cause of the injury. The test is to be found in the probable injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise.' In that case it was held immaterial whether the act of the boy in moving the truck and thus causing the iron to fall upon the plaintiff was mere negligence or voluntary wrongdoing."

Judgment of common pleas court affirmed.

**Burrows** and **Laubie, JJ.,** concur.