## Commonwealth v. Cioni Accessories

*Morley W. Baker*, Assistant Attorney General, for Commonwealth.

*Richard S. Campagna*, for defendant.

BOWMAN, J., March 18, 1964.—Orlando F. Cioni, doing business as Cioni Accessories, appellant, has appealed[1] from the action of the Bureau of Employ-

---

[1] As authorized by section 304(c) of the Unemployment Compensation Law, Act of December 5, 1936, P. L. (1937) 2897, as amended, 43 PS §784.

ment Security of the Department of Labor and Industry in disallowing appellant's petition for reassessment of contributions theretofore assessed against appellant with respect to moneys paid to individuals by appellant in the conduct of his business. The assessment in question was made June 6, 1958, in the amount of $1,753.23 principal contributions with interest thereon of $174.95 calculated to November 30, 1956. An indeterminate portion of the assessed contributions relates to wages paid to an individual whom appellant admitted to be an employe at the hearing conducted by the department and, hence, is not involved in this appeal. The remainder of the assessed contributions involves payments made by appellant to "homeworkers" for work performed by them in their respective residences.

After the appeal was perfected in July 1958, neither party proceeded to have the same heard until November 1962, when the department obtained a rule on appellant to show cause why the appeal should not be dismissed for want of prosecution. An answer to the rule was filed in December 1962, and again the matter lay dormant until it was listed for argument on the rule and answer in January 1964. At argument, however, the parties stipulated that the matter be disposed of on its substantive merits which will here be done.

It is appellant's contention that the record of the hearing conducted by the bureau on appellant's petition for reassessment does not support its decision that the payments made by the appellant to these homeworkers were "wages" and that these individuals were in the "employment" of appellant within the meaning of these words as defined in section 4 of the Unemployment Compensation Law.[2]

Before setting forth the principal facts which are

---

[2] Act of December 5, 1936, P. L. (1937) 2897, as amended, 43 PS §753.

deemed to have been fairly established at the aforesaid hearing, disposition must be made of one of the department's contentions, upon which much testimony was elicited of the witnesses but which, in the court's opinion, is not decisive of the legal issues here involved and the testimony so taken to be irrelevant to such legal issues.

A principal contention of the department is that appellant, being subject to the provisions of the Industrial Homework Law,[3] and thereby required to accept responsibility for compliance with the provisions of said act pertaining to ages of workers, hours and places of work and sanitary conditions of the work place,[4] of necessity had to exercise certain direction and control over the homeworkers in question who were thereby *not* free of such control and direction as required by the exclusionary provisions from the word "employment" as contained in section 4(1)(2)(B) of the Unemployment Compensation Law.[5]

In this contention the department ignores the fact that in its scope the Industrial Homework Law is applicable to any person who causes work to be done on articles or materials in another's home regardless of the existence or nonexistence of the employer-employe relationship under common law definition or as defined

---

[3] Act of May 18, 1937, P. L. 665, 43 PS §491-1, et seq.

[4] Section 13 of the Industrial Homework Law, supra, 43 PS §491-13.

[5] Section 4, supra, 43 PS §753, which provides:

"Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business."

in other statutes. To accomplish this end said statute does define "employer" [6] but does so in such broad terms, including that of a relationship of independent contractors, that no significance can be assigned to the fact that a person is subject to said act in determination of whether he is an employer within the meaning of another statute, and particularly in this matter, within the meaning of the Unemployment Compensation Law. To sustain the department's contention would necessarily result in every person subject to the provisions of the Industrial Homework Law being an employer within the meaning of the Unemployment Compensation Law. The disparity of definitions in the two acts will not support this conclusion. This contention of the department is, therefore, rejected and all testimony elicited in support thereof is considered irrelevant to the legal issues here raised, except to the extent that it might show direction and control in general by appellant over the homeworkers rather than in compliance with the provisions of the Industrial Homework Law.

The record made at the hearing on appellant's petition for reassessment consists of his testimony as a witness for the bureau, the testimony of his one admitted employe, whose primary duties consisted of delivering to and picking up articles and materials from homeworkers, and that of two homeworkers. This record establishes that appellant was in the business of sewing decorative beads by hand on slippers and moccasins for shoe manufacturers. He had no place of business other than his home and his automobile wherein articles and materials were stored and from which they were distributed. Under sundry oral contracts appellant, from time to time, would receive from a shoe manufacturer a quantity of certain unfinished parts

[6] Section 3, Industrial Homework Law, supra, 43 PS §491-3.

of shoes known as vamps or plugs to which were to be added beads in prepunched holes, the color scheme and layout of each pattern being shown by sample.

To fulfill his obligation to the shoe manufacturer, appellant would contact homeworkers, many of whom solicited work from him and some of whom were known to him by reason of previous work performed for him, appellant would then meet with one or more of them to discuss the pattern and work and to agree upon a piece rate for that particular work. When such rate was so established it tended to establish the rate for work performed by other homeworkers who thereafter agreed to work on any particular pattern and design. All homeworkers contacted by appellant and performing work for him were women, the majority of whom were housewives. After the piece rate for such work had been agreed upon, appellant would deliver to such homeworkers the unfinished shoe part together with the needed beads to complete the pattern and the thread and needle necessary to perform the work. Originally, the material and tools were supplied to the homeworkers by appellant at no cost, but subsequently appellant charged the homeworkers for these materials and tools at the cost price to him. The homeworkers performed their work depending upon their efficiency and the time devoted thereto within an indefinite time period and were generally paid for their work upon completion of the number of pieces which had been delivered to them. On occasion appellant would pay a homeworker for work completed on a portion but not all of the pieces originally delivered to such homeworker.

Appellant in his oral contract with shoe manufacturers was also paid on a per piece basis and his margin of profit was substantially the difference between the price paid to him by the shoe manufacturer and the amount paid by him to the homeworker, less some expenses for the delivery and pickup of the unfinished

and finished pieces and minor overhead expenses of operating the business.

Other than discussing the intricacy of a particular design and discussing the per piece price to be paid by appellant to the homeworker at the time the same was negotiated, and having an understanding as to the anticipated time necessary for the homeworker to complete the work on the number of pieces agreed to be received from appellant, appellant exercised no direction or control over the manner in which the work was to be performed, the hours of the day in which the work was to be performed or by whom the work was to be performed, and in some cases the homeworker had her husband or children assist in the performance of the work.

It was not until appellant was advised by the Department of Labor and Industry that he was subject to the provisions of the Industrial Homework Law that he made any inquiries or made any statements to the homeworkers concerning the use of their minor children in the performance of the work, hours of work or the sanitary conditions of the home in which the work was performed. As noted above, this testimony is not considered relevant to the legal issue here involved.

By his own testimony appellant stated that he believed the homeworkers to be self-employed, that they worked on the completion of the bead patterns at such times and with such help as they chose, without direction from or supervision by him, except to the extent that an understanding had been reached at the time of negotiation as to the delivery date of the finished work. Appellant did reserve the right to reject the completed product if it did not comply with the shoe manufacturer's sample and pattern design. The testimony of the two homeworkers substantiated appellant's testimony as to the methods employed by him in obtaining their services, in negotiating the per piece rate for the work,

the period in which the work was to be performed, and in the method and manner employed by them in completing the work. One homeworker did testify that during a period of unemployment she applied for unemployment compensation benefits for which she was found financially eligible based on earnings during a base year which included remuneration received from appellant, but her evident lack of knowledge of the eligibility provisions of the Unemployment Compensation Law, and the fact that she was employed in covered employment both before and subsequent to the period she worked for appellant lend little significance to this testimony. On the other hand, appellant never withheld from remuneration paid to the homeworkers for Federal income tax or social security purposes, which testimony, while not controlling, is at least equally persuasive as and countervailing to the testimony of the homeworker with respect to her application for unemployment compensation benefits.

Against these facts must be applied the provisions of the Unemployment Compensation Law, and solution of the issues here raised will depend upon the definition of the words "wages", "employer" and "employment" as contained in said act, and more particularly the exclusionary provisions found in section 4(1)(2)(B). The statutory definition of these words is controlling and not the ordinarily accepted meaning of these terms: Penn-Lehigh Corporation Appeal, 191 Pa. Superior Ct. 649 (1960); Bureau of Employment Security v. Hecker & Co., 78 Dauph. 354 (1962).

Section 4(x) defines in pertinent part the word "wages" to mean:

" 'Wages' means all remuneration, (including the cash value of mediums of payment other than cash), paid by an employer to an individual with respect to his employment . . ."

Section 4(j) defines in pertinent part the word "employer" to mean:

" 'Employer' means every—(1) individual, . . . who or which employed or employs any employe in employment subject to this act . . ."

Section 4(l)(1) defines in pertinent part the word "employment" to mean:

" 'Employment' means all personal service performed for remuneration by an individual under any contract of hire, express or implied, written or oral . . ."

And the exclusionary clause therein, section 4(l) (2)(B), provides in pertinent part as follows:

"Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business."

As may be observed by the foregoing definitions, whether these homeworkers received "wages" from appellant and whether appellant was their "employer" depends upon whether they were in his "employment" within the meaning of the act as the first two definitions are wholly dependent upon the latter. Nor does appellant contend that these homeworkers were not in the "employment" of appellant as this word is broadly and initially defined. Rather, appellant contends that the relationship between appellant and these homeworkers was such as to bring them within the exclusionary provisions set forth in section 4(l)(2)(B), above, and this is the narrow issue in this appeal.

In resolving this issue there must be kept in mind that the Unemployment Compensation Law, being

remedial in nature, should be liberally construed in accomplishment of its announced purposes and that its exclusionary provisions should, therefore, be strictly construed: Blum Unemployment Compensation Case, 163 Pa. Superior Ct. 271 (1948) ; Bureau of Employment Security v. Hecker & Co., supra.

In construing the exclusionary provisions from the meaning of "employment" as set forth above, the Pennsylvania Supreme Court in Department of Labor and Industry v. Aluminum Cooking Utensil Company, 368 Pa. 276 (1951), in holding that certain distributors and dealers who solicited orders for a manufacturer's products were not its employes by reason of such exclusionary provisions, stated, pp. 281-282:

"These exclusions from the class of employees otherwise created by the act are in the conjunctive; therefore they must all co-exist if the employer is to be exempted from the payment of contributions based upon the employment of such individuals."

Hence, if appellant is to succeed in this appeal, it must be established from the record (1) that the homeworkers whom he engaged to perform the work did so free from control or direction over such performance both under the contract for hire and in fact, *and* (2) that the homeworkers in performing the work were customarily engaged in an independently established trade or business.

In interpreting the first of these two conditions, our appellate courts have resorted to common law principles applicable to the distinction between an employer-employe relationship and that of an independent contractor,[7] and have done so notwithstanding seemingly contrary pronouncements that "employ-

---

[7] In addition to the case quoted from, also see Blum Unemployment Compensation Case, supra; American Writing Machine Co. v. Unemployment Compensation Board of Review. 148 Pa. Superior Ct. 299 (1942).

ment" as defined in the act has a broader connotation than it does at common law.

In the Aluminum Company case,, supra, the court said, page 280:

"On the question of the scope of the controlling term 'employment' as thus defined the authorities in the various jurisdictions are conflicting. Is it to be understood as limited by the technical common-law concept of the relationship of employer and employe? Or does it extend the employment relationship for purposes of the act to a more inclusive group, without reference to, and unrestricted by, criteria applicable to the determination of such relationship at common law. Having in mind the broad purposes of this unemployment compensation legislation as expressed in the preamble to the act, it is our opinion that it was the intention of the legislature to provide for a larger coverage of employes entitled to unemployment compensation than merely those who would be considered employes under the common law, and to include, as it expressly states, 'all services performed for remuneration', subject only to the exceptions specified in other provisions of the act hereinafter referred to."

But in discussing the first of the two conditions in the exclusionary provisions, the court said, page 282:

"As to (a), the first of these prescribed conditions, —that the individual performing services for remuneration in an employment be free from control or direction over the performance of such services both under his contract of service and in fact—it is clearly met by the Aluminum Cooking Utensil Company with regard to its distributors and dealers. The facts stipulated by the parties, as above set forth, show that no such control or direction by the Company exists. According to the test set forth in Feller v. New Amsterdam Casualty Co., 363 Pa. 483, 486, 70 A. 2d 299, 300,

and in many other cases, the distributors and dealers are independent contractors."

In the Feller case cited above, the common law concept of the independent contractor relationship as distinguished from that of employer-employe is stated to be as follows, pp. 486-487:

"The legal distinction between an employee and an independent contractor is so well established as to require little if any discussion. The characteristic of the former relationship is that the master not only controls the result of the work but has the right to direct the way in which it shall be done, whereas the characteristic of the latter is that the person engaged in the work has the exclusive control of the manner of performing it, being responsible only for the result: McColligan v. Pennsylvania R. R. Co., 214 Pa. 229, 232, 63 A. 792, 793; Eckert v. Merchants Shipbuilding Corp., 280 Pa. 340, 348, 349, 124 A. 477, 480, 481; Campagna v. Ziskind, 287 Pa. 403, 407, 135 A. 124, 125, 126; Walters v. Kaufmann Department Stores, Inc., 334 Pa. 233, 235, 5 A. 2d 559, 560; Joseph v. United Workers Association, 343 Pa. 636, 638, 639, 23 A. 2d 470, 472. 'Broadly stated, if the contractor is under the control of the employer, he is a servant; if not under such control, he is an independent contractor. . . . It is not . . . the fact of actual interference or exercise of control by the employer, but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor': 27 Am. Jur. pp. 486, 487. . . . In deciding whether one acting for another is a servant or an independent contractor the fact that his compensation is on a commission basis instead of in the form of wages is not a material factor: Blum Unemployment Compensation Case, 163 Pa. Superior Ct. 271, 276, 60 A. 2d 568, 570; Singer Manufacturing Co. v. Rahn, 132 U. S. 518, 523; 27 Am. Jur. pp. 494, 495. On the other hand,

an extremely important consideration is the power of the master to terminate the relationship at any time with or without cause, since that tends strongly to show that the person employed is not an independent contractor but a servant: 27 Am. Jur. p. 501; Dickson v. Hollister, 123 Pa. 421, 430, 16 A. 484, 487; American Writing Machine Co. v. Unemployment Compensation Board of Review, 148 Pa. Superior Ct. 299, 304, 25 A. 2d 85, 87; Blum Unemployment Compensation Case, 163 Pa. Superior Ct. 271, 276, 60 A. 2d 568, 570; Singer Manufacturing Co. v. Rahn, 132 U. S. 518, 523."

From the foregoing we conclude that while "employment" within the meaning of the Unemployment Compensation Law has a broader meaning than at common law, for the purposes of determining whether or not the first condition of the exclusionary provisions of section 4(1) (2) (B) has been met, traditional common law principles distinguishing between the employer-employe relationship and that of an independent contractor shall be applied.

Applying these guidelines to the instant case, we conclude that the record establishes no control or direction by appellant over the performance of the work which these homeworkers agreed to perform. While the relatively simple operation to be performed on the shoe parts by the homeworker, which required chiefly dexterity and patience, might suggest control of performance by appellant because of the prepunched holes and the prescribed design, these were essentially what might be termed specifications of the work and did not go to actual performance of the work, albeit the simplicity of the work to be performed. Conversely, appellant, while having the right to reject the finished piece for noncompliance with the sample or design, never actually supervised the homeworkers who did the work on such days, at such hours and by such persons as

they chose, on a per piece basis as to compensation and within a loosely determined period of time. When appellant obtained the materials free from the shoe manufacturer he freely delivered them and the tools, thread and needles, to the homeworkers. When he was required to purchase the same he charged the homeworkers for them at his cost. Nor did the understandings with the various homeworkers suggest a right of direction or control as distinguished from actual control, and there is no evidence whatsoever that appellant could unilaterally cancel without cause the agreements he had from time to time made with the various homeworkers for the performance of the work on the number of pieces which they had, from time to time, agreed to complete. Any direction or control appellant may have exercised as to the use of minors, hours of work or sanitary conditions in the home where the work was performed resulted from advice to him by the department that he was subject to and the work in question was within the provisions of the Industrial Homework Law. The record is barren of any evidence that he exercised any such control except in an effort to comply with said act. As above stated, this act is applicable to a relationship of independent contractors as well as that of employer-employe, and conduct of appellant in an effort to comply with its provisions is not considered controlling or relevant to the determination of the issues here raised.

We, therefore, conclude that the relationship between appellant and these homeworkers was that of independent contractor for the purposes of this test.

This leaves for determination the question of whether appellant has met the second exclusionary test prescribed by the act: that the individual homeworkers were customarily engaged in an independently established trade, occupation or business.

While we have not heretofore been confronted with this problem as applicable to industrial homeworkers, the Pennsylvania Supreme Court and this court have interpreted this clause in other cases.[8] In the Aluminum Company case, in commenting upon this clause, the Supreme Court observed, page 282:

"As to (c), the second of the conditions—that the individual be customarily engaged in an independently established occupation or business—it appears that the distributors, junior dealers and field dealers may sell merchandise other than the Company's products, even products of the Company's competitors, and a number of them do in fact sell competitive products. They operate their business without hindrance from any source whatever and entirely free from control. While working for the Company they can and do engage in similar work for others; their occupations are not confined to, nor 'established' only for, the performance of the Company's work, and, while no doubt the major part of their business is in handling the Company's products, it is not the sole part."

In the AAA Moving and Storage Co. case, Judge Swope, in a review and exhaustive analysis of other decisions on this point, stated, 24 D. & C. 2d 502-504:

"As correctly pointed out by Judge Sohn in the Research, Inc., case, supra, the test of the term 'proprietary' as contained in the Illinois case is: May the subject be fairly considered as 'being in business for himself', rather than, as the Commonwealth contends: Does the subject have an established place of business and/or capital investment.

---

[8] Department of Labor and Industry v. Aluminum Cooking Utensil Company, supra; Bureau of Employment Security v. AAA Moving and Storage Co., 24 D. & C. 2d 494, 76 Dauph. 335 (1961); Department of Labor and Industry v. Stuart & Co., 76 Dauph. 136 (1960); Department of Labor and Industry v. Research, Inc., 68 Dauph. 267 (1955).

"Having found that the activities in question were 'independently' established, we must now determine whether they were 'customarily' engaged in. Here again the Commonwealth errs when it contends that this requirement has not been established. Webster's New International Dictionary, 2d Ed., defines 'customary' as 'agreeing with, or established by, custom.' Custom is defined as 'a form or course of action characteristically repeated under like circumstances.' The evidence in this case establishes that the individuals in question brought their customers to appellant's place of business consistent with the character and nature of the business in which they were engaging as 'peddlers'. True, some of the individuals were employed regularly by others as employees, and engaged in the activities in question on a part time basis only, but the statutory requirement is not that the activities be engaged in 'primarily', or 'exclusively', or 'principally', but only 'customarily'. The terms are not synonymous, nor are the first three necessarily included in the last.

"The test is rather: *Whenever the individuals actually did engage in the activities in question, did they ordinarily or 'customarily' engage in them in such a way as to be considered 'independent', i. e.: Did the individual hold himself out, and was he capable of performing the particular activities in question for any who wished to avail themselves of such services; and, was the nature of the activity not such that the individual was compelled to look to only a single employer for the continuation of such services, on an ordinary employer-employe relationship.*" (Italics supplied.)

An examination of the record before us in light of these tests might fairly establish that these individual homeworkers were in business for themselves within the first test laid down, even though they had no capital investment in their business nor a place of business apart from their residences. This could possibly

be argued from the very nature and definition of industrial homework. However, the record is almost entirely barren of any testimony which would support a determination that appellant has met the test that these individuals were customarily engaged in the homework in question. With the exception of one or two vague references in the testimony as to some of the individual homeworkers possibly having worked at some time doing similar work for some other person, the record is devoid of any evidence that the work performed was a usual or customary subject of industrial homework by these individuals or by other homeworkers, or that these homeworkers were independent of appellant in the sense that they did similar work for other persons or held themselves available for such work. On the contrary, the testimony indicates that most if not all of these homeworkers performed work in this field only for appellant, and were wholly dependent upon appellant for whatever work they did or could obtain. Thus, rather than establishing that these individual homeworkers were customarily engaged in this particular occupation, the record suggests that appellant could deny them future work with or without cause and thereby effectively deny them any possibility of work in this field.

If perchance there is a recognizable or established field of industrial homework with respect to the same or similar lines of work performed by these individuals for appellant, and from which it could be shown that these individual homeworkers were not dependent upon appellant for such work or similar work, the record does not disclose it; and it is the appellant's burden to bring himself within the exclusionary language.[9] In the absence of such evidence, and while the record possibly establishes that these individual homeworkers

---

[9] Bureau of Employment Security v. AAA Moving and Storage Co., supra.

were independent of appellant in the proprietary sense, appellant has failed to establish that they were customarily engaged in an occupation which did or could possibly make them independent of appellant in the economic sense.

Inasmuch as appellant has not met both of the exclusionary provisions of section 4(1) (2) (B) of the act with respect to the individuals in question, we make the following

*Order*

And now, March 18, 1964, the appeal of Cioni Accessories is hereby dismissed and the determination of the Bureau of Employment Security that the individuals in question were in the employment of appellant within the meaning of the Unemployment Compensation Law is hereby sustained.