JOHN MARCY *vs.* MOSES BARNES & others.

In an action on a promissory note purporting to be made by two persons, one of whom contests his liability on the ground that his name was fraudulently placed upon the note after it came into the possession of the plaintiff, the plaintiff may introduce evidence that before discounting the note, and in the absence of the defendants, he inquired of another person concerning the pecuniary responsibility of both the alleged makers, and was informed that the one whose signature is in controversy was good and the other unfit to be trusted; but not that at the same conversation the plaintiff said that he was to have the name of this defendant upon the note.

Upon the issue of the genuineness of a signature, magnified photographic copies of this signature, and of admitted genuine signatures of the same person, are admissible in evidence, accompanied by competent preliminary proof that the copies are accurate in all respects except as to size and coloring.

A photographer, who is accustomed to examine handwriting in connection with his business, with a view to detect forgeries, is qualified to give an opinion, as an expert, as to the genuineness of a disputed signature; even if his opinion is based in part on enlarged photographic copies made by himself of the disputed signature and of admitted genuine signatures of the same person, which he testifies are accurate copies except as to size and color.

ACTION OF CONTRACT.   Trial and verdict for the plaintiff in this court before *Hoar*, J.   The defendants alleged exceptions, the substance of which is stated in the opinion.

*P. C. Bacon*, for the defendants.

*C. Devens, Jr. & G. F. Hoar*, for the plaintiff.

MERRICK, J.*. This is an action to recover the contents of the promissory note declared on, purporting to be signed by all the defendants.  Zephaniah Baker & Co. were defaulted, and Moses Barnes alone interposed any defence.  In his answer, he denied the genuineness of the signature of his name which appears upon it, and alleged that it had been fraudulently placed there.  This constituted the issue to be determined; and it was conceded at the argument by the counsel of both partes that the precise question which arose and was contested upon the trial was whether the name of Moses Barnes was affixed to the note before or after it came into the possession of the plaintiff.

In addition to other evidence produced by the plaintiff,

* CHAPMAN, J. did not sit in this case.

Lucian Marcy was called as a witness in his behalf, and testified that he was present on a certain occasion, and heard the plaintiff, in reference to a loan about to be made by him to Z. Baker & Co., make inquiries of his father respecting their credit; that his father replied that he would not trust them a dollar; that he then said he was to have the name of Moses Barnes; and that his father said Moses Barnes was good. This conversation was not in the presence or knowledge of either of the defendants; and the whole of this testimony was objected to by the defendant Barnes. But of the admissibility of a part of it we can entertain no doubt. It was competent for the plaintiff to show that, before parting with his money, he exercised the reasonable precaution of making himself acquainted with the pecuniary responsibility of the parties to whom it was to be lent; and proof that he obtained information from a person, upon whose knowledge and judgment he believed he could confidently rely, that Baker & Co. were worthless and unfit to be trusted, but that Moses Barnes was a man of undoubted credit and ability, would have a tendency to create a high degree of probability that the loan would not have been made without the security afforded by his becoming a party to the note, and thus to show that his name must have been upon it when it was taken. This would be in conformity to the common experience, that men of ordinary prudence consult their own interest and use reasonable care in securing and preserving their own property, and therefore was a circumstance which, though by no means conclusive, yet had an important bearing upon the question at issue. 1 Stark. Ev. (1st Amer. ed.) 487. And upon such a question evidence of inquiries made by the party in interest, and of the information obtained in reply, is not obnoxious to the objection that it is mere hearsay, but is primary and original. The whole, taken together, is a fact, which, like any other fact, may be shown and established by any competent means of proof. 1 Greenl. Ev. § 101.

But the testimony of Lucian Marcy went further than this. He was allowed to testify to the plaintiff's own statement and declaration, that he was to have the name of Moses Barnes

upon the note which he was about to take. This statement was in relation to a very material question, indeed to the very point in issue to be determined. As this evidence, by the over-ruling of the objection made to its admission, was permitted to be laid before the jury as competent and proper for their consideration, it could not, if the testimony was believed, fail to have a very prejudicial effect against the defendant, and seriously to weaken and impair the defence upon which he was insisting. The admission of such proof was in violation of the well-known and reasonable rule, that a party cannot by outside and collateral statements in his own behalf make evidence for himself. He was properly allowed to testify upon the trial; but he could not lawfully be permitted to add to that the weight and force of any declaration or statements made elsewhere, when he was not on oath nor subject to the scrutiny of a cross-examination. For this reason, the exception of the defendant to this part of the testimony of Lucian Marcy appears to have been well taken, and it must be sustained.

The magnified photographic copies of the genuine signatures of the defendant, and of the disputed signature, which was submitted to the inspection of the jury, were, we think, in connection with the testimony of Mr. Southworth, admissible in evidence. Assuming it to be true, as he testified, which yet was a fact first to be considered and determined by the jury, that the copies were accurate in all respects, excepting only in relation to size and color, they were capable of affording some aid in comparing and examining the different specimens of handwriting which were exhibited on the trial. It is not dissimilar to the examination with a magnifying-glass. Proportions are so enlarged thereby to the vision, that faint lines and marks, as well as the genuine characteristics of handwriting which perhaps could not otherwise be clearly discerned and appreciated, are thus disclosed to observation, and afford additional and useful means of making comparisons between admitted signatures and one which is alleged to be only an imitation. Under proper precautions in relation to the preliminary proof as to the exactness and accuracy of the copies produced by the art of

the photographer, we are unable to perceive any valid objection to the use of such prepared representations of original and genuine signatures as evidence competent to be considered and weighed by the jury.

The ruling under which Mr. Southworth was permitted to testify as to his opinion respecting the genuineness of the signatures submitted to his inspection does not appear to have been in any particular incorrect. He had testified that he was accustomed to examine handwriting in connection with his business as a photographer, with a view to detect counterfeits and forgeries, and that his opinion concerning the disputed signature was founded partly upon the photographic copies, introduced in evidence, which he himself had made. It is a general rule, that the court is to determine in the first instance, upon the evidence produced, whether the witness offered is qualified by his peculiar skill, knowledge and experience in any particular art or employment, to testify as to his opinion as an expert; and unless the evidence upon which the determination to allow the witness to testify in that manner is reported, the decision is not open to revision in another court. *Quinsigamond Bank* v. *Hobbs*, 11 Gray, 250. But upon the proof offered upon that subject, as reported in the bill of exceptions, it appears to us that the decision was correct. It is of no consequence how or by what means such peculiar skill or knowledge is acquired; it is quite sufficient if it is in fact possessed.

The evidence as to the manner in which the plaintiff procured the money which he lent to Baker & Co. seems to have been immaterial. We do not think it necessary to express any further opinion in relation to it, as it may not be offered, or, if offered, yet under different circumstances on another trial.

*Exceptions sustained.*