# Wells v. Leek, Appellant.

[Marked to be reported.]

*Coal lands—Sale—Thorough examination for coal—Mode.*

A vendee who has covenanted to thoroughly examine land in search of an undervein of coal in order to settle the price to be paid for the land may select the mode, if none be prescribed by the contract.

He has a right to consider the results of former examinations on the same land, and the established facts of science relating to the formation

of the carboniferous measures, and to the stratified rocks above and below them as well as his own work.

*Evidence of examination—Corroboration—Expert witnesses.*

Having proved that his examination showed no trace of the vein sought for and that he thence concluded it did not exist, he has a right to show, in corroboration by expert witnesses, that they have examined the tract by the application of scientific and practical tests with which they are familiar, and that the vendee reached a correct conclusion

*Instructions as to weight of expert testimony.*

It is not error to leave it to the jury to determine the weight of expert testimony, but they should be instructed that the value of such testimony depends largely on the extent of the experience or study of the witness. The greater the experience or knowledge, the greater is the value of the opinion resting upon it.

*Practice—Order of proof.*

Where defendant had agreed to pay a maximum price for coal land, unless after a thorough and exhaustive examination he finds that a certain supposed vein of coal does not exist, plaintiff suing for the price is not bound to show defendant's manner of performance or its insufficiency, in the first instance. But if he has shown the manner of performance by the defendant as part of his case in chief, it is not error to allow him to give evidence tending to show its insufficiency.

Argued Feb. 24, 1892. Appeal, No. 165, Jan. T., 1892, by defendant, Walter M. Leek, from judgment of C. P. Wayne Co., March T., 1890, No. 128, on verdict for plaintiff, Sidney B. Wells, et al. Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and HEYDRICK, JJ.

Assumpsit for purchase money of realty.

The facts appear by the opinion of the Supreme Court.

Plaintiff, in his main case, asked a witness whether in his opinion one hole fifty-four feet deep, put down with a diamond drill, was a thorough and exhaustive test for one hundred and thirty-nine acres of land, to ascertain whether there was an underlying vein of coal.

Objected to on the ground that defendant had not shown what examination was made by defendant. Objection overruled, exception. The witness answered in the negative. [9]

Defendant's offer to prove by expert testimony that in point of fact there was no workable vein of coal on the property, underlying the seam then being worked by defendant, was rejected. [1]

The court charged in part as follows, by SEELY, P. J. :

" This case is in some respects one of considerable interest to us in Wayne county.  It is the first time that parties have presented to the consideration of a court and jury in Wayne county the question of the formation of the coal measures and the methods of prospecting lands for the finding of coal.  While Wayne county has been largely interested for a great many years in coal, it has been rather the transportation of coal, and for that reason this case presents some new questions to the court and jury that will require our careful consideration. [2] . . . .

" The issue presented to you here is not whether there is or is not coal under the land, but whether the defendant within two years made the necessary examination and test as required by his contract. [3] . . . .

" But if he did not make the test, as required by his contract, within two years from the time that this contract was executed, which was on the 28th day of March, 1888, then he became absolutely liable for the $3,400, the balance of the purchase money on this contract.  The only question for you is whether he made the test or not, as required by his contract.  What was a proper and sufficient test, under the terms of this contract?  This is a question for you to determine, before you can determine whether that test was made. [4] . . . .

" We say to you that it is not so important how this test is conducted as it is to ascertain whether the test as it was conducted proves the absence of another vein of coal below the vein that was opened.  This is the important matter.  No matter by what means the result or conclusion is reached, if that conclusion is satisfactorily reached so that you can say that the examination was thorough and exhaustive and proves the absence of another vein of coal under this one vein, then that is sufficient to satisfy this contract. [5] . . . .

" The question is whether, taking such facts [scientific knowledge or operations in the valley] into consideration, he has followed them up by such an examination upon this tract as proves that there is no other vein of coal underlying this vein which has been spoken of as already known to exist." [6] . . . .

" You have heard their testimony [speaking of expert wit-

nesses] in qualifying themselves as experts, the amount and extent of their experience, the business in which they have been engaged, and their knowledge of these facts that are material in the case, and it is for you to determine what weight shall be given to the opinion of any of these witnesses. Some of them you may think entitled to more weight because they have had a wider experience and have made a more careful study of the matters relating to these questions; that matter is entirely for you." [7] . . . .

"If it is an established fact among geologists and among men that test in the earth, that these strata uniformly lie in this order, first the true conglomerate, and below that the green sandstone, and below that the red shale, that would assist you in determining whether this rock that was struck was the true conglomerate or not." [8]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1, 9) rulings on evidence, and (2–8) instructions, quoting bills of exceptions and charge.

*H. W. Palmer, E. C. Mumford* with him, for appellant.—The purpose of the tests was to ascertain whether coal existed on the land under the top vein. If defendant could show that none was to be found, tests and examinations were useless.

The court erred in emphasizing the local importance of the case. Also in putting the whole case upon the sufficiency of the test, irrespective of the non-existence of the coal; and in instructing the jury that defendant was bound to make such tests as would prove the absence of another vein of coal.

The instructions as to expert testimony were inadequate and erroneous; and it was error to leave to the jury as a disputable fact, a geological truth regarding the relative position of the true conglomerate. The burden was on plaintiff to prove in chief that defendant had failed to make thorough and proper tests. After proving that one hole had been put down, experts were called to show that this was not sufficient, in spite of defendant's objection that it had not been shown that no other tests were made. Had this evidence been excluded, plaintiff would have failed to make out a case.

*George S. Purdy,* for appellees.—The contract provided for a release of defendant only in case he made a thorough and

exhaustive test within two years, and found no sufficient under-vein; the issue was whether or not he had made such test. The experts were fairly treated in the charge, and the value of their testimony was properly left to the jury.

Defendant in fact made but one test; the others which were alleged were made for the purpose of developing the vein already worked.

OPINION BY MR. JUSTICE WILLIAMS, October 3, 1892.

The plaintiffs sold a tract of land containing one hundred and thirty-nine acres to the defendant for three thousand nine hundred dollars. By the terms of the contract of sale five hundred dollars of the purchase money were to be paid in hand, and the defendant was then to make "a thorough and exhaustive examination," within two years, for a workable vein of coal below that which was then opened and worked. If the defendant failed to make such examination, or if he made it and found a workable vein of coal, the remaining three thousand four hundred dollars of the contract price became due and payable; but if the defendant made the examination and no such vein of coal could be found, no more purchase money was to be paid. This suit was brought after the expiration of two years, on the theory that the defendant had not made such an examination as his contract required. The defence was that "a thorough and exhaustive examination" had been made, and the absence of the vein looked for established.

The case turned therefore on the character of the examination made. If the defendant had complied with his contract, the plaintiff was without a cause of action. If he had not, he was without a defence. The contract required the examination of the tract for a lower workable vein of coal to be thorough and exhaustive. A thorough examination is one that goes through the subject and thereby settles the question involved. Such an examination is necessarily "exhaustive" of the subject, so that the insertion of this word does not add to the defendant's duty. There may be several modes of examination open to the investigator and unless the contract prescribes one or more of these, the selection may be made by him on whom the duty to examine rests. No mode of examination was stipulated for in this case, so the defendant was at

liberty to select that which seemed most desirable, subject to the duty of making his examination thorough and exhaustive by whatever method he should adopt. In settling this question he had a right to take into consideration the results of former examinations made upon the same land, and the established facts of science, relating to the formation of the carboniferous measures, and to the stratified rocks above and below them.

The evidence shows clearly that this tract was on the outer rim of the coal basin to which it belonged, with the measures coming sharply to the surface at the outcrop.

The conglomerate rock which forms the floor of the carboniferous measures came to the surface near its eastern boundary. The green and red sandstone came up in their order after the conglomerate, and made it clear that the rock above them was the true conglomerate that underlies the coal measures. If a workable vein was to be found upon the tract it was thus made certain that it was to be looked for west from the outcrop of the conglomerate and between that rock and the surface. This area had been partially explored by former owners. A hole had been bored by means of a diamond drill to a depth of one hundred and fifteen feet, on the westerly portion of the tract, and a core showing the rocks penetrated had been removed and preserved. In this hole the conglomerate was reached at one hundred and ten feet below the surface, but no workable vein of coal was found between it and the open vein. Having this knowledge, the defendant went easterly some seven or eight hundred feet, and, at a place selected with the approval of the plaintiffs, located another boring. The diamond drill at this point struck the conglomerate at a depth of fifty-four feet, but penetrated no workable vein of coal. Going four or five hundred feet further east the conglomerate came out upon the surface. In addition to the use of the drill the defendant examined the surface, following the rocks as they came up going westwardly from the outcrop of the conglomerate to the western boundary of the tract, but no evidence of a workable vein of coal below that known and worked could be found.

The defendant had the following facts before him : There was a small piece of what was believed to be the Clifford or bottom vein of the basin open on the tract. Going east from this coal the lower measures down to the conglomerate were thrown

to the surface before the eastern boundary of the tract was reached. An examination of these rocks disclosed no evidence of the existence of workable coal below the Clifford vein. The diamond drill had penetrated these measures down to the conglomerate at about five hundred feet west of the outcrop, and again at about twelve to fourteen hundred feet and no indications of the existence of a lower workable vein had been found. From these facts the defendant concluded that no such vein as he was seeking existed within the lines of the tract, and closed his examination. But to show that his examination had been thorough, and had led him to a correct conclusion, he offered to prove by experts in geological science, and by persons who had become practical experts by reason of their familiarity with the coal measures in that region, that they had been upon and examined the tract and that there was no workable vein of coal upon it below that already opened. This offer the learned trial judge rejected, saying that the question for the jury was not whether there was coal upon the tract, but whether the examination made by the defendant was sufficient under the terms of the contract.

This was a correct statement of the question. The defendant had contracted to make a "thorough and exhaustive" examination. He was bound to show that he had done so. He had laid before the court and jury the character and extent of his search for the supposed vein of coal, and the fact that no traces of it could be found in the outcrop of the measures on the surface, or in the rocks lying in place, as their character had been disclosed by the drill. Was this a thorough examination? Had it led to a correct conclusion? The defendant so alleged, and asked the jury so to find. To aid them in settling the question he offered to show by these expert witnesses that they had gone upon the tract and examined it by the application of scientific and practical tests with which they were familiar, and that the defendant had reached a correct conclusion. There was no workable coal below the open vein. The defendant's examination had seemed to him thorough and exhaustive and had led him to believe the vein of coal he was in search of had no existence on the tract. If men possessing great scientific or practical knowledge of the coal measures were of the same opinion, and were able to say from the results

of their own examination of the tract that no such vein existed upon it, this was corroborative evidence which was entitled to great weight. It bore upon the sufficiency of the defendant's examination and the correctness of his conclusions. Standing by itself it would not amount to a defence, but after proof of the character of the examination actually made it was competent upon the question of its sufficiency and thoroughness. This disposes of the first, third, fourth, fifth and sixth assignments of error.

There is no error in what was said upon the subject of the value of the expert testimony, which is the subject of the seventh assignment, but the court should have further said that the value of expert testimony depends largely on the extent of the experience or study of the witness. The greater the experience or knowledge, the greater is the value of the opinion resting upon it.

The ninth assignment cannot be sustained in view of the course of the trial. The plaintiff could well have rested on his contract. He was not bound to show the defendant's manner of performance and its insufficiency in the first instance; but he chose to do so. He could have attacked the sufficiency of the examination more intelligently after the defendant had shown its character and its extent, and such an order of trial would have been fairer toward the court and jury, and toward the defendant; but having been allowed to anticipate the defence and then attack it upon his own understanding and representation of it, we cannot say that the court erred in allowing the witness to give his opinion of the sufficiency of the examination as it then appeared. If this question had been asked after the evidence for the defendant had been given showing all that had been done the objection should have been sustained.

The judgment is now reversed and a venire facias de novo awarded.