Opinion by
Oblady, J.,
The only material question involved in this appeal is the action of the court in sustaining the objections to the offers of the testimony of Dr. John C. Price and Charles L. Griffin, the one a microscopist and the other a photographer. The important question of fact for decision by the jury in the trial in the court below was, whether the word “ seal,” inclosed within a scroll, had been added to the note after it had been signed by the defendant. The genuineness of the signature to the note was admitted, and the note, as well as a photograph of it, and an enlarged photograph of the three last letters of the signature taken with the scroll and its inclosed word, were received in evidence without objection.
It was conceded that Dr. Price was an expert in the use of the microscope, and that Mr. Griffin had had twenty-five years’ experience as a photographer. The offer in each case was to prove that, with the aid of the microscope .and camera, the witness would say that the last part of the signature over *530 laps the scroll and was last written. The evidence offered in the fourth, fifth and sixth assignments was objected to, and rejected solely for the reason that the witness did not profess to be nor qualify as an expert in handwriting. Testimony of other witnesses was introduced by the plaintiff tending to support her theory, and by the defendant that the ink with which the scroll and word seal were written was lighter in color, and that the scroll was applied upon the point of junction with the defendant’s signature. These specialists were not offered as handwriting experts, but only to prove by the microscopist that, when subjected to a critical examination by the microscope, “ He ascertained, as a result of his examination, that the last part of the signature overlaps the seal,” and by the photographer, “ That when he took a photograph of the seal on the note, upon a greatly enlarged scale, he could see upon the plate of the camera that the black ink of the signature came down over the blue ink of the scroll below; that the greatly enlarged reproduction of the seal on the ground glass of the camera enabled him to see that much more plainly than it could be seen upon the note itself.”
The Act of May 15, 1895, P. L. 69, defines the competency of experts and the rules of evidence in questions of simulated or altered handwritings, and if we assume the scroll and its inclosed word to be “ a writing in dispute ” within the provisions of that act, there is nothing in this case to suggest a comparison or placing in juxtaposition of genuine or disputed handwritings. The act in nowise changed the law as to other evidence in determining the fact in dispute in this case: Shannon v. Castner, 21 Pa. Superior Ct. 294. Experts in microscopy or photography are not required to be experts in handwriting in order to qualify them to testify to special facts within the range of their particular scientific investigation. The note being in evidence before the jury, inevitably the admitted signature and disputed scroll would be compared. To the naked eye it is apparent that they touch or may overlap ; whether the name was written first or both by the same ink, was the controverted fact. If a competent expert microscropist or photographer could confidently say that the letter of the signature was over- the scroll, his testimony should be received, and if he gave intelligent reasons for his conclusions, *531 he would be entitled to credit with the jury: In re Hopkins’ Will, 172 N. Y. 360 (65 N. E. Repr. 173); s. c., 65 L. R. A. 95. The final determination of the fact would still remain a question solely for the jury on all the evidence submitted, and subject to the same tests as in the case of a handwriting expert under the act of 1895, by which it is provided that it is competent for counsel to require from the expert “ a statement of the principles on which he bases his work, the details of his work, and his opinion that the results are important to the point in issue, or the reasoning, analysis and investigation by which he has arrived at his opinion.” The value of expert testimony depends largely on the experience or study of the witness. The greater the experience or knowledge the greater is the value of the opinion resting upon it: Wells v. Leek, 151 Pa. 431.. Simply to exhibit the result of the work and withhold an examination of the various steps necessary to produce it, together with an analysis of the methods employed in the progression, and an intelligent account of each incident which is necessary to explain it, would be but a part only of the exact truth of the test for which the expert’s services are required. This is particularly so when we consider the complicated arrangement of the microscope and camera, the skill and experience necessary to adjust and use them, the accommodation of the object and lens with technical nicety to the eye of the observer in order to secure truthful and convincing results. It would be very unsatisfactory, at least, if not impossible, to exhibit such a process in detail to the untrained eyes of a jury during a trial. Such an attempt would be a poor substitute for the permanent enlargement of the object which would present the disputed fact to all the jurors alike, and not vary with their several examinations. While the proportions are so enlarged thereby to the vision that faint lines and marks, which perhaps could not be discerned by natural vision, are disclosed, and while the copies are accurate in all respects, except only in size and color, yet the process by which the result is secured may, or may not, make manifest still further important facts, depending upon the skill of the operator. If it be true that such an examination discloses to the skilled operator the difference in the color of the ink, and the order in which it is placed upon the paper, the fact so ascertained is as competent *532 as any other fact in regard to which he may be examined: Marcy v. Barnes, 82 Mass. 161; s. c., 77 Am. Dec. 405; U. S. v. Ortiz, 176 U. S. 422; 44 L. ed. 529 (20 Sup. Ct. Repr. 466). In careless, inexpert or interested hands these highly sensitive instruments are capable of very serious misrepresentation of the original: Beardslee v. Columbia Township, 188 Pa. 496. The same objection could be urged, with like force, to every species of expert or skilled testimony, and a thorough examination of the witnesses is always expected, and is necessary to determine the true measure of their credibility before the jury. See also Dederichs v. Salt Lake City R. R. Co., 35 L. R. A. 802; City of Geneva v. Burnett, 58 L. R. A. 287; Oskamp v. Gadsden, 17 L. R. A. 440 and notes.
As stated by Dr. Wharton in his work on Criminal Evidence, sec. 9, “ Whenever there, is a specialty in which there is an expert, then the expert may be examined as to the specialty. What the telescope can assure us of; what the microscope can assure us of; what we can be assured of by chemical tests; what we can be assured of by careful induction, produced by long and accurate observation, as to all these lines, experts are summoned.” The principal contention, however, is that, conceding the scientific knowledge of the artists, and that care and skill were used in the observations; yet, it was not competent for them to testify to what they saw in their field of vision under the microscope and in the camera, in support of the offers. Even in confining the question to such limited boundaries, we are not without authority to warrant the admission of such testimony. In Stevenson v. Gunning’s Estate, 64 Vt. 601 (25 Atl. Repr. 697), it was held that, a witness shown to be an expert in the use of the microscope might properly be examined as to what he saw when he examined a note alleged to have been forged, in regard to its appearance; although it is error to allow one shown only to be an expert in the use of the microscope to go further and express his opinion that one character had been changed to another. And in Bridgman v. Corey’s Estate, 62 Vt. 1 (20 Atl. Repr. 273), it was held to be error “ to exclude the testimony of an expert witness, that upon an examination under the microscope, of the paper bearing the writing in question, he discovered traces of pencil marks, and that the fiber of the paper has the appearance *533 of being rubbed and broken before the ink was laid, and it was a mistake to exclude it upon tbe ground that the microscope, being in court, could be used by the jury, and that they were as well able to judge of the fact to which the witness’s attention was proposed to be called.”
When the note was offered in evidence, the court held that there was not any alteration apparent on the face of the paper, such as courts take notice of as matter of law to require the person offering it to explain an alleged alteration before receiving it is an item of evidence. This ruling was manifestly proper, and, as the note then appeared from an inspection of the paper itself, the seal was an integral part of it: Duncan v. Duncan, 1 Watts, 322. It was not a question of the sufficiency of the seal as such, but of its genuineness. If found by the jury to be genuine, it would follow, as matter of law, from its location and form, that the maker adopted it as his seal, and the jury should have been so instructed. The slight departure from the printed line where the signature touched the scroll from above, would not, of itself, be sufficient to justify the jury in finding that the maker intentionally avoided a genuine seal which had been placed for his adoption. The validity of a writing should not be imperiled by so unsubstantial and meaningless a fact. The defense was that there was no seal on the paper when the defendant signed it. How then could it reasonably be urged that he slanted his signature to avoid and reject the seal he was contending had no existence ? Whether the seal on this note was adopted by this defendant was for the jury under all the evidence: Hacker’s Appeal, 121 Pa. 192; Lorah v. Nissley, 156 Pa. 329. Nor is it important that the usual attestation clause is lacking from the body of the note. As stated by Chief Justice Tilghman in Taylor v. Glaser, 2 S. & R. 502, “Two principles are well founded: One, that although in the body of the writing, it is said, that the parties have set their hands and seals, yet it is not a specialty unless it is actually sealed and delivered; another, that if it be actually sealed and delivered, it is a specialty, although no mention be made of it in the body of the writing; the fact, and not the assertion, fixes the nature of the transaction.” See also Long v. Ramsay, 1 S. & R. 72; Miller v. Binder, 28 Pa. 489.
The judgment is reversed andavenire facias de novo awarded.