# Blasband, Appellant, *v.* Philadelphia Rapid Transit Company.

*Negligence—Street railway companies—Traumatic tuberculosis—Expert testimony—Evidence.*

1. In an action to recover damages for personal injuries the plaintiff may show in a proper way that traumatic tuberculosis resulted directly from the personal injury which he had sustained.

2. Where the evidence shows the infliction of the injury and its character, the existence of a bruise on the plaintiff's left side followed by pleurisy, continuing cough, expectoration in which there was tubercular bacilli, loss of weight all within a period of eight months after the injury, the absence of any other reasonable proximate cause, and two eminent physicians testify as to the definite relation between the injury and the tuberculosis of the plaintiff, and other eminent physicians called by the defendant admit that there had been cases, although few in number, where trauma had been the direct cause of tuberculosis, the question whether the injury was the cause of the tuberculosis of the plaintiff, is a question which should be submitted to the jury.

Argued Dec. 16, 1909. Appeal, No. 173, Oct. T., 1909, by plaintiff, from judgment of C. P. No. 2, Phila. Co., June T., 1907, No. 4,187, on verdict for plaintiff in case of Benjamin Blasband v. Philadelphia Rapid Transit Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before WILTBANK, J.

The case turned upon the question whether it was proper to submit to the jury the question whether the plaintiff's tuberculosis resulted from a personal injury which he had suffered from the undisputed negligence of the defendant.

The court charged in part as follows:

[I therefore instruct you that when you proceed to estimate in money what is a fair compensation for the injury to this man, you are to exclude all evidence touching the point

of traumatic tuberculosis as fully and conclusively as if none had been offered.] [1]

[Your verdict must be for the plaintiff, but when you proceed to make it up, you must throw out of consideration all question of consumption.   The plaintiff is not entitled to consideration on that point, not because we do not sympathize with him, but we have not evidence upon which you may act.] [2]

[The cases of traumatic tuberculosis are shown to be so few in number out of the volume of cases attributable to other causes, as to which the evidence is not disputed here, that at best the attribution of the tuberculosis to trauma does not rise above the grade of a theory adopted by a relatively small number (a most respectable number, it is true) of one profession.   The witnesses have manifested a scientific spirit in searching the truth and reporting upon it.   They would seem, however, to justify wholly my characterization of the evidence.   Before such a theory can become a factor in determining the rights of the mass of men in our community, it must have so far advanced in the degree of certainty attached to it that it may be fairly said to have passed beyond the region of possibility and to have entered that of probability, according to the understanding of the average intelligent man.   Such is not the effect of the evidence adduced here by these gentlemen.] [3]

Verdict and judgment for plaintiff for $600.   Plaintiff appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*Harry A. Mackey*, for appellant.—It was error to withdraw from the jury the question of the plaintiff's tuberculosis: O'Neill v. Dry Dock, etc., R. R. Co., 15 N. Y. Supp. 84; State v. Clark, 12 Ir. (N. Car.) 151; Hynes v. McDermott, 82 N. Y. 41; Taft v. R. R. Co., 35 N. Y. Supp. 1042; Tait v. Ry. Co., 55 N. Y. App. Div. 507; Castner v. Sliker, 33 N. J. L. 507; Hardiman v. Brown, 162 Mass. 585 (39 N. E. Repr.

192); Seckinger v. Mfg. Co., 129 Missouri, 590 (31 S. W. Repr. 957); Railroad Co. v. Buck, 96 Indiana, 346; Beauchamp v. Mining Co., 50 Michigan, 163 (15 N. W. Repr. 65); Ry. Co. v. Kemp, 61 Md. 74; Dickson v. Hollister, 123 Pa. 421; Del. & Chesapeake Steam Towboat Co. v. Starrs, 69 Pa. 36; Temme v. Schmidt, 210 Pa. 507.

*Thomas Leaming*, with him *Bernard J. O'Connell*, for appellee.—A court never submits to a jury any question which can only be answered by a guess: Pittsburg Southern Ry. Co. v. Taylor, 104 Pa. 306; Frazier Bros. v. Lloyd, 23 W. N. C. 178; Chilton v. Cent. Traction Co., 152 Pa. 425; Howard Express Co. v. Wile, 64 Pa. 201; Jones v. R. R. Co., 202 Pa. 81; Laven v. Moore, 211 Pa. 245; Sowers v. McManus, 214 Pa. 244; O'Reilly v. Ry. Co., 17 Pa. Superior Ct. 626; Alexander v. Water Co., 201 Pa. 252.

No inference can be based upon an inference but only upon facts: Phila. City Pass. Ry. Co. v. Henrice, 92 Pa. 431; Bube v. Weatherly Borough, 25 Pa. Superior Ct. 88; Keefer v. Ins. Co., 201 Pa. 448.

The law will not undertake to deal with matters which are insusceptible of proof, such as mere theories: Collins v. Gas Co., 131 Pa. 143; Huston v. Freemansburg Borough, 212 Pa. 548.

Opinion by Orlady, J., March 3, 1910;

The plaintiff in this action of trespass recovered a verdict of $600, in the court below, and being dissatisfied with the amount of the verdict, he brings this appeal, with a statement of the question involved as follows: Whether or not the learned trial judge was justified in charging the jury that there could be no recovery for traumatic tuberculosis, notwithstanding the fact that competent physicians had testified that in their judgment the plaintiff was suffering from tuberculosis of the lungs caused by trauma. The case was earnestly contested by able counsel on the trial and in this court, and it is practically conceded that the testimony in regard to the negligence of the defendant was so thoroughly proven, that it was treated as an admitted

fact. The character and extent of the injury, however, becomes important in another view of the case.

On June 22, 1907, the plaintiff was driving a horse hitched to a Dearborn wagon, which was loaded with boxes containing soda water and soft drinks. Before he had a chance to get off the defendant's track, a car struck the back of the wagon, with such violence as to break the axle and front wheels from the body, tear the bottom from the wagon, and to upset the plaintiff back among the boxes, some of which fell on him. One witness testified that the car struck the rear end of the wagon, on the left wheel, and turned it completely around so as to face the other way. The plaintiff testified that prior to that time he had been in good health, and that in this accident he received a cut on the left arm which was of minor account, and an internal injury to his left side about the lower rib. That at the place of the injury on his left side there was a bruise, discoloration, tenderness and pain. That when he went home, he sent for his family physician, Dr. Propper, and was confined to bed for about two weeks. That he had continuous pain in his left side and could not sit up for any length of time, that about September or October a cough developed, which did not yield to treatment and has since continued.

Dr. Propper testified that he saw the plaintiff in bed the evening of the accident and found a contusion on the left side of the chest, with a bluish discoloration about two inches in diameter; that during the first or second day following the accident his chest was too sore to make a deep examination, and that about the ninth or tenth day thereafter he made a careful examination and noticed pleuritic or rough sounds in the chest; the patient still complained of the pain in the left side which has continued without modification down to the time of the trial. In September a persistent cough developed, and in February following, the plaintiff began to lose weight. An examination of his sputum developed the presence of tubercular bacilli; he was then informed by the physician that he had tuberculosis and in April took a trip abroad, returning in September, 1908. At the time of the trial, it was admitted by all physicians who had examined him, that he had tubercu-

losis which affected both lungs, the left one being the more seriously involved. Dr. Propper had known the plaintiff for a number of years, and testified that there was nothing in his appearance, by observation, to indicate that he was not in good health, and particularly nothing to indicate that he had tuberculosis, although prior to that time, he had a chronic catarrhal cough, which affected the nasal membrane, and it is but fair to state that there was nothing in any of the testimony to connect it with the complication in the lungs.

A number of eminent physicians were called as witnesses for plaintiff and defendant, and their prominence in their profession was so well known to court and counsel, that no preliminary inquiry was made to determine their competency to testify as expert physicians, and their evidence was received without any objection. They were graduates of and professors and teachers in colleges of world-wide reputation. They had experience extending over many years of clinical and hospital practice. Several of them had devoted special attention to the investigation of tuberculosis, its cause and treatment, and one was an author of medical works of recognized professional standing.

Dr. James C. Wilson, with forty years of experience, testified that he had made a special study of tuberculosis and described it as an infectious disease, caused by the tubercular bacillus, that he had opportunities for examination of a great number of cases, and was familiar with the literature of his profession on this subject, that at times the disease undergoes its evolutions rapidly and sometimes slowly. He stated without qualification that tuberculosis could be caused by an injury, and that in his personal experience he knew of four cases that were caused by trauma or blow, that only within comparatively recent years the subject of traumatism or injury as a cause of tuberculosis has attracted the attention of the profession. After an examination of the plaintiff, in the light of the admitted facts in regard to his injury, subsequent pleurisy, cough and demonstration of the presence of tubercular bacilli within eight months after the injury, and the development of an extensive tuberculosis of the lungs, with

pleuragnious origin, he unhesitatingly stated that the relation between the injury as a cause and the present condition of the patient as an effect, was obvious, and from the admitted facts in regard to the case, that the tuberculosis from which the plaintiff then suffered was caused by the injuries sustained at the time of the accident; that the post nasal catarrh was not a cause of his present condition, and further, that the most recent, systematic writers on the practice of medicine and upon tuberculosis, all include trauma or injury among the causes of tuberculosis.

Dr. Julius Salinger, for many years chief of medical clinics in colleges in this city examined the plaintiff twice, some months before the trial, and found by an examination of his sputum that he was suffering from pulmonary tuberculosis. He testified that according to the authorities and his own experience, trauma acts in two ways, in producing tuberculosis, either by starting into activity a latent focus which is quiescent and shows no disturbance, or by so damaging the pulmonary tissue that the tubercle bacillus finds a ready soil for its entrance and development. That in his examination of recorded cases, in German, English and American medical literature, he had within the last two years made a record of forty-seven cases of traumatic tuberculosis and that it was only within eight or nine years that the subject of traumatic injuries as a cause of tuberculosis, began to be investigated, and that five cases had come within his personal experience, none of which had any connection with any legal claim.

The defendant called as witnesses men of like prominence, the first being Dr. Walter Strong, who was the surgeon in chief and visiting surgeon to two hospitals of this city. He testified that while comparatively few cases of tuberculosis following traumatism, or in connection with traumatism, had come under his personal observation, he had treated all kinds of tuberculosis, and that in his experience he had seen probably two cases that might be construed as following or being connected with traumatism. He had examined the plaintiff four days after the accident for the defendant company, and found an abrasion of the left forearm which was beginning to heal; that

an examination of the chest revealed no sign of injury, that is, there was no sign of any sensitive place, nor was there any discoloration which is usually found in connection with bruises, however, the plaintiff called the attention of the witness to a sensitive spot which was on the left side below the floating ribs.

Dr. Henry Beates, an assistant in several special institutions in this city, testified that during the thirty years of his practice he had seen several hundred cases of tuberculosis and had not met with any case of traumatic tuberculosis, and that he has never seen the first proof that tuberculosis has ever resulted from injury, though admitting that the literature of the profession made record of a number. He was directly questioned as follows: "Q. Do you believe that there ever was one case of tuberculosis of bones following injury? A. Yes, sir, but not caused by the injury. There is a big difference between causing it and being followed by it. Q. Your theory is that the tubercle bacilli locate in that part because it has been weakened by injury? A. That can happen, certainly. Q. Why cannot that happen in the lungs following injury to the pleura? A. It could."

Dr. William D. Robertson, a pathologist for two hospitals, testified that he had never seen a case of tuberculosis of the lungs caused by traumatism. However, on cross-examination, he admitted that he had never made a special investigation of tuberculosis with traumatism as an originating cause.

Dr. Abraham J. Cohen, of like prominence and experience, testified that he had never seen a case of traumatic tuberculosis, but admitted that a diaphragmatic pleurisy could spread to the lungs, and that an injury to the pleura which would weaken the lungs would have a tendency to collect the tubercular bacilli, which would naturally gravitate and collect at the weakest point if the injury was sufficient to injure the pleura or lung covering.

Dr. William E. Hughes, a pathologist, consulting physician and professor of clinical medicine in three hospitals and colleges, and lecturer in post graduate work, testified that about a thousand cases of tuberculosis had been examined by him,

and that in his experience he has seen three fairly well marked cases of traumatic tuberculosis of the lungs, all of which had special characteristics; there had been an injury to the chest which injury unquestionably involved the lung. Immediately afterward there was inflammation of the lung, which subsided and eventually in the course of a few months, tuberculosis developed at that site, and ran a rapid course. He further testified that he did not believe it possible for tuberculosis to follow any trauma to the lung unless it could be demonstrated that there had been an injury to the pulmonary tissues.

The learned court submitted the case to the jury, and limited the plaintiff's right to recover to a fair compensation for the injury, and directed them to exclude all evidence touching the question of traumatic tuberculosis as fully and conclusively as if none had been offered. In direct terms the court instructed the jury, viz: "The cases of traumatic tuberculosis are shown to be so few in number, out of the volume of cases attributable to other causes as to which the evidence is not disputed here, that at best the attribution of the tuberculosis to trauma does not rise above the grade of a theory adopted by a relatively small number (a most respectable number, it is true) of one profession. Before such a theory can become a factor in determining the rights of the mass of men in our community, it must have so far advanced in the degree of certainty attached to it that it may be fairly said to have passed beyond the region of possibility and to have entered that of probability, according to the understanding of the average intelligent man. Such is not the effect of the evidence adduced here by these gentlemen."

From this record, it is quite apparent that during the past ten years there has been a startling advance in the diagnosis and treatment of this dread malady, which is the cause of one-seventh of our whole mortality. Philanthropists and scientists have combined their efforts with the medical profession, and have investigated in a more intense way than ever before to discover the cause and remedy for tuberculosis. This investigation is not confined to isolated localities, or to the research of a few persons. All the prominent medical colleges of this

country have been directing a special investigation in that direction, and the results are most gratifying in making more certain the preventive and curative treatment for this dread disease. The general sum of knowledge on this as in nearly all other branches is so subdivided, that courts are obliged often to call to their aid the scientist and specialist to explain conditions which are unknown to the general public. The mere difference of opinion between witnesses, or our failure to comprehend the conclusions of the scientific investigator or agree with his deductions, may affect his credibility from the individual standpoint, but it does not affect the admissibility of such testimony for the consideration of a jury. If admissible for any purpose, it should be submitted to the jury for their consideration under proper instructions. The competency of the witness was for the court and this question was conceded by the defendant. The sufficiency of the evidence was for the jury: Oil Co. v. Gilson, 63 Pa. 146; Pannell v. Com., 86 Pa. 260; Com. v. Hazlett, 16 Pa. Superior Ct. 534; Brashear v. Traction Co., 180 Pa. 392; McCafferty v. R. R. Co., 193 Pa. 339; Dickson v. Hollister, 123 Pa. 421; Temme v. Schmidt, 210 Pa. 507.

The testimony in this case discloses that as a result of painstaking and conscientious research by disinterested scientists, a specific germ has been demonstrated beyond all question of doubt as causing the diseases of diphtheria, typhoid fever, pneumonia, la grippe, malaria and tuberculosis. There is a clear distinction between the guess and conjecture that is inveighed against by some judges and some text writers, and the carefully formed opinion of capable, honest and eminent physicians. The first implies a lack of definite knowledge, a mere imperfect opinion, a surmise; the other means an intelligent judgment formed, and an honest conclusion reached by a capable person, after due and fair investigation of all the facts pertaining to the case, and while even this may not produce a mathematical certainty, it does induce a positive belief in the mind of conscientious men.

The question of the admissibility of expert testimony and the credence to be given to it by a jury, have been subjects of frequent controversy but the decisions in our state are uni-

form and the rules are clearly defined. As held in Com. v. Farrell, 187 Pa. 408, "two things must concur to justify the admission of an expert witness. First, the subject under examination must be one that requires that the court and jury have the aid of knowledge or experience such as men not specially skilled do not have, and such therefore as cannot be obtained from ordinary witnesses; second, the witness called as an expert must possess the knowledge, the skill or experience needed to inform and guide the court and jury in the particular case. Upon such a question such a witness may be called and may testify, not merely to facts, but to his conclusions from the facts, because the court and jury are without the knowledge necessary to enable them to draw the conclusion for themselves without aid." All expert or opinion testimony is of course valueless unless it comes from persons who first give satisfactory evidence that they are possessed of such experience, skill or science as entitles their opinion to pass for scientific truth: Carr v. Northern Liberties, 35 Pa. 324. Thus, a chemist, a physician, a mechanic, an artist, has special knowledge of the things that fall within the range of his studies and daily practice, and because of such special knowledge not within ordinary reach, his testimony upon a subject relating to his particular line of study or research is regarded as more exact and entitled to more weight than that of witnesses not possessing the same opportunity for acquiring thorough knowledge of the subject: Struthers v. Railroad Co., 174 Pa. 291. The greater the experience or knowledge, the greater is the value of the opinion resting upon it: Wells v. Leek, 151 Pa. 431.

The purpose the law has in calling to the jury's aid the testimony of a skilled expert is to supplement their general knowledge and experience in relation to the matters before them and thereby to aid them in the exercise of their own knowledge, to the end that a more full and accurate conclusion may be drawn from the evidence, and such testimony is justly entitled to great weight, if the jury are impressed by the facts and opinions testified to by the expert witness, and are convinced that the experience and means of observation of the expert justify him in arriving at a definite conclusion, in regard to

the special matters he describes. The testimony of no witness, however eminent, is to be blindly received by a jury, but it is to be intelligently examined in the light of the knowledge of the jury, and is to be given force and control only to the extent that the testimony is found to be reasonable, and it is not for the court but for the jury to consider the testimony of the expert with all the other evidence in the case.

We have not overlooked the vigorous protest of the Supreme Court against opinion evidence in Huston v. Freemansburg Boro., 212 Pa. 548, as follows: "In the last half century the ingenuity of counsel, stimulated by the cupidity of clients and encouraged by the prejudices of juries has expanded the action for negligence until it overtops all others in frequency and importance, but it is only in the very end of that period that it has been stretched to the effort to cover so intangible, so untrustworthy, so illusory and so speculative a cause of action as mere mental disturbances. It requires but a brief judicial experience to be convinced of the large proportion of exaggerations and even of actual fraud in the ordinary action for physical injuries from negligence, and if we opened the door to this new invention the result would be great danger if not disaster to the cause of practical justice." It is urged that the testimony in this case is so doubtful and unsatisfactory in tracing the present tuberculous condition of the plaintiff backward to the injury of June, 1907, that the court was justified in withdrawing its consideration entirely from the jury. To this we cannot agree; while we are in full accord with the views of the Supreme Court in the last cited case, it certainly does not mean that we are to close our eyes to results that are testified to with reasonable certainty by eminent scientists. The existence of traumatic tuberculosis does not stand on such doubtful ground as the mere mental disturbance relied upon by the plaintiff in Huston v. The Boro. There is no serious controversy among the witnesses as to tuberculosis being caused by physical violence to the body. The infliction of the injury and its character, the existence of the bruise on the left side, followed by pleurisy, continuing cough, expectoration in which there was tubercular bacilli, loss of weight, all within a period of

eight months, the absence of any other reasonably proximate cause presented a sequence of undisputed facts, and from these, Drs. Wilson and Salinger testified that the relation between the definite cause and the unchallenged condition of the plaintiff at the time of the trial was obvious, and for the defendant, Dr. Strong, found the sensitive spot on the left side just where the plaintiff testified he had received his injury, and he had seen in his own practice two cases of traumatic tuberculosis. Dr. Beates testified substantially that the very condition of the plaintiff at the time of the trial could be produced if the pleura had been injured. Dr. Cohen admitted that diaphragmatic pleurisy could spread to the lungs, that an injury to the pleura which would weaken the lungs would have a tendency to produce the plaintiff's present condition, if the injury was sufficient to injure the pleura. Dr. Hughes had seen three fairly well marked cases of traumatic tuberculosis of the lungs, but he did not believe it possible for tuberculosis to follow any trauma to the lungs unless there had been injury to the pulmonary tissue. All the physicians called except Drs. Beates and Robertson, admitted the reasonable probability of tuberculosis following trauma, and all but these two testified to having personally seen in their own experience cases of this character.

With such an array of witnesses of extensive personal experience, observation, skill, judgment and reputation, and the facts with their reasonable inferences being developed under skilful examination by able counsel, their testimony should have been submitted to the jury for its consideration, along with the other testimony in the case, and should be given such force and control, to the extent that the facts and opinion of the experts are found to be reasonable. The physical injury to the left side promptly followed by the clearly defined conditions, were not presumptions, but affirmative facts following each other from a defined proximate cause, in a progression which satisfied the experienced physicians of the causal connection with the succession of events: Brashear v. Traction Co., 180 Pa. 392; McCafferty v. R. R. Co., 193 Pa. 339; Matthews v. R. R. Co., 18 Pa. Superior Ct. 10.

We do not feel any alarm for the consequences in acting upon the judgment and opinion of such experts. These or like physicians are the first persons we seek when our personal health is involved, and we accept their conclusions as to the cause of disease and submit ourselves to the treatment they suggest. We are safeguarding the cause of suitors as far as it is possible when we apply the same professional standard in the courts.

The judgment is reversed with a venire facias de novo.