## Giles, Appellant, *v.* Bennett et al.

Argued October 3, 1929. Before Moschzisker, C. J.,
Frazer, Walling, Simpson, Sadler and Schaffer, JJ.

*C. James Tannehill*, with him *U. G. Vogan*, for appellant.—The court was not justified, under the evidence, in determining as a matter of law, that deceased was negligent; and that the entering of judgment non obstante veredicto was, therefore, error: Cronmuller v. Even. Tel., 232 Pa. 14; Patterson v. Ry., 210 Pa. 47; Hanna v. Ry., 213 Pa. 157; Kohler v. R. R., 135 Pa. 346; Allen v. Willars, 57 Pa. 374; Ely v. Ry., 158 Pa. 233; Glase v. Phila., 169 Pa. 488; Danko v. Rys., 230 Pa. 295.

*O. K. Eaton*, for appellee.—The case is for the jury: Fish v. Stulb, 274 Pa. 87; Kauffman v. Nelson, 225 Pa.

174; Joyce v. Smith, 269 Pa. 439; Schmidt v. Ry., 224 Pa. 205.

OPINION BY MR. JUSTICE FRAZER, November 25, 1929:

This action was originally brought by plaintiff against Joseph Bennett and William F. Ryan to recover damages for the death of plaintiff's husband as a result of being struck by a truck owned by Ryan and driven by Bennett. At the trial a nonsuit was taken as to Bennett and the case proceeded against Ryan. A verdict was rendered in favor of plaintiff. Judgment was subsequently entered for defendant non obstante veredicto and this appeal followed.

The accident occurred on Second Avenue in the City of Pittsburgh, which is a main thoroughfare running east and west. Deceased was employed at a manufacturing plant situated along the south side of that avenue. There is a double track street car line on the street and opposite the entrance to the mill is a regular stopping place for trolley cars. Deceased was a passenger on a westbound car running on the north track headed toward the business part of the city. The car stopped opposite the entrance to the mill at which deceased was employed, which is the customary place, and deceased alighted and immediately proceeded to pass around in front of the car to cross the street. Both parties concede this was the proper place to cross and was regularly used for that purpose by employees of the mill. The testimony on behalf of plaintiff is that after deceased passed the front of the car he crossed the space between the east- and westbound tracks, referred to as the "dummy," and as he stepped on the eastbound trolley track, was struck by defendant's truck which was running westward and in the act of passing on the left side of the trolley car. A bystander seeing the truck approaching shouted a warning to deceased and the latter immediately jumped or took a step forward in an apparent endeavor to reach the opposite side of the

street and avoid the truck; his effort however to prevent the contact was unsuccessful. There is evidence from which the jury could infer that the truck was running at a high rate of speed and without adequate warning of its approach; accordingly the question of negligence on the part of the driver was properly for the jury and need not be considered here. The sole question is whether deceased was guilty of contributory negligence in failing to look for approaching vehicles before attempting to cross the street.

There was no statute or rule of law in existence at the time this accident happened forbidding drivers of vehicles passing to the left of standing trolley cars. It also appears from the testimony that at the point where the accident occurred there was a space not exceeding seven or eight feet clearance between the wall on the north side of the street and the overhang of trolley cars passing along the north- or westbound track, and that because of this narrow space it was the general custom of drivers of vehicles to pass to the left instead of the right of westbound cars. While this fact would have bearing mainly on the question of negligence of the driver of the truck, it is also material under the circumstances here involved on the question of contributory negligence of deceased as affecting his duty to look for the approach of vehicles from the east after having passed around in front of the standing trolley and before starting to cross to the sidewalk. Several of plaintiff's witnesses testified that deceased, after passing in front of the trolley car, looked to the right or westward. In absence of evidence to the contrary it must be presumed he performed his full duty to take due precaution for his own safety and looked also to the left. The court below, in entering judgment for defendant non obstante veredicto, held in effect that the evidence was sufficient to rebut the presumption of due care and to justify the court in saying as matter of law that deceased failed to look to the left before entering on the

track. The correctness of this conclusion depends upon whether the evidence of the witnesses as to the actions of deceased covered the entire period of time which elapsed from the moment he stepped from in front of the trolley car to the time he was struck. One of plaintiff's witnesses testified that when he saw deceased start to cross the street in the direction of the witness, deceased was looking "down the street towards the city," and on seeing the truck approach, the witness called to deceased to "look out," whereupon the latter "kind of made a jump out of the road" and that "it all happened in an instant." The witness stated that at the time deceased jumped he was "about in front of the truck." This witness did not say how long he observed deceased, but he testified that when he heard the noise of the approaching truck he looked and saw deceased crossing the street, at which time, as stated above, the latter was "looking down the street towards the city." He also stated that when he first saw deceased the latter had at the time passed the left line of the street car. Another witness testified that deceased "got off the front end and walked around the front end of the street car and looked in towards the city and just kept walking on to cross the street" when "all at once the truck came along and hit the man." He was not asked and did not state whether or not deceased also looked to the left. A third witness, the motorman of the trolley car, called on behalf of plaintiff, testified deceased got off the right side of the trolley, walked around in front of the car and passed over the track, the examination further proceeding: "Q. As he walked across in front of your car and on across to where he was hit, did you notice him,— whether he looked in either direction? A. He looked west. Q. You don't know whether he looked east or not? A. No, I didn't, I saw him glancing toward the city." On cross-examination this witness further testified, in answer to a question as to where deceased was when he saw him: "He was on the first rail. Q. That

is when he was looking west? A. Yes, sir. Q. And he didn't look east? A. No." This testimony, it will be observed, is self-contradictory on the question whether or not deceased looked eastward. The doubt as to exactly what he observed is further increased by the fact that he stated in another part of his testimony that "when I turned around he was already struck. Q. He had been struck? A. No, when I glanced around I saw him being struck after that yell. Q. Was that when he was in the dummy? A. Yes, sir."

The foregoing testimony, all of which came from plaintiff's own witnesses, does not fully account for the actions of deceased from the time he passed in front of the standing trolley until he reached the middle of the adjoining eastbound track on which he was struck by defendant's truck, so as to justify the legal conclusion that the presumption of due care was rebutted: Patterson v. Ry., 210 Pa. 47, 49; Hanna v. Ry., 213 Pa. 157, 160. In both of the above cases the evidence failed to account for the actions of deceased during the entire time as he approached the railroad tracks, and it was held to be for the jury to say whether the presumption was rebutted. A question of sufficiency of evidence to rebut the presumption of due care, appears in Hartig v. American Ice Co., 290 Pa. 21, where it is said (page 33) : "In all our recent cases, we have consistently held that oral evidence relied on to overcome presumptions sufficient to take plaintiff's case to the jury, must be submitted to that body to determine as to the credibility of the witnesses, the inferences to be drawn from their testimony, and the facts to be found therefrom, unless the testimony in question, being clear, positive, credible, uncontradicted and indisputable, shows physical facts, or forms the basis for mathematical tests which demonstratively govern the case in defendant's favor."

While it is true the contradictory evidence in this case comes from plaintiff's witness, this at most calls for the application of the rule that if on one part of the plain-

tiff's testimony or that of a witness he is entitled to go to the jury and on another part he is not, or where different parts of his testimony are inconsistent, it is for the jury to reconcile such conflicting statements and say which shall prevail: Cronmuller v. Evening Telegraph, 232 Pa. 14, 17, and cases there cited.

The circumstance that deceased was struck almost immediately after leaving the track on which the trolley car was standing and as he stepped on the adjoining eastbound track, tends to the conclusion that if he had in fact looked to the eastward he would have seen that which was plainly visible, and which in fact had already been seen by one of plaintiff's witnesses on the opposite side of the street, who shouted a warning to deceased to "look out." But we must bear in mind that this accident occurred at a crossing for pedestrians, though there was no street crossing, and the rights and duties of deceased and the truck driver were reciprocal. Each was bound to use due care. But what deceased was bound to guard against was vehicles approaching at a reasonable rate of speed and under such control as the presence of the crossing required. He was not bound to anticipate the truck would attempt to pass over the crossing running at the rate of 40 miles an hour. See Johnson v. French, 291 Pa. 437, where this court said (page 438): "Appellant contends that plaintiff was guilty of contributory negligence and that she should not have been permitted to recover on her own showing, because she should not have continued walking across the street, admitting, as she does, that she saw defendant's automobile coming toward her and that it increased its speed. If this rule were adopted, it would be tantamount to saying that pedestrians cross the streets at appointed crossings at their peril if automobiles are in view. We have determined that at crossings all motor drivers must be highly vigilant and maintain such control that, on the shortest possible notice, they can stop their cars so as to prevent danger to pedestrians who

have the right to cross the streets at crossings and to rely on the drivers of automobiles not to run them down: Anderson v. Wood, 264 Pa. 98; Mooney v. Kinder, 271 Pa. 485; Eckert v. Merchants Shipbuilding Corp., 280 Pa. 340; Gilles v. Leas, 282 Pa. 318."

Under all the circumstances, the case was for the jury. The judgment is reversed, and the motion for a new trial reinstated in order that defendant's rights may be fully considered and protected, and, if a new trial is not granted, then judgment is directed to be entered on the verdict.