## Adams *v.* Gardiner, Appellant.

Argued January 18, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Henry A. Frye,* with him *Fletcher W. Stites,* for appellant.—Plaintiff was contributorily negligent: Weinberg v. Pavitt, 304 Pa. 312; Curry v. Willson, 301 Pa. 467; Campagna v. Lyles, 298 Pa. 352; Alperdt v. Paige, 292 Pa. 1.

Judgment n. o. v. was not properly entered: Thatcher v. Pierce, 281 Pa. 16; Mountain v. Glass Co., 263 Pa. 181; Galliano v. Electric Co., 303 Pa. 498.

*E. Arnold Forrest,* with him *Tustin & Wesley,* for appellee.—Plaintiff was entitled to have the question of his contributory negligence submitted to the jury even though part of his testimony would preclude him: Kozak v. Transit Co., 92 Pa. Superior Ct. 574; Giles v. Bennett, 298 Pa. 158; Kennelly v. Waropoyak, 266 Pa. 94.

Even though his own testimony as to the speed of defendant's car was conclusive as to that fact: Fraser v. Voight, 100 Pa. Superior Ct. 248; Wescott v. Geiger, 92 Pa. Superior Ct. 80; Curry v. Willson, 301 Pa. 467; Hayes v. Schomaker, 302 Pa. 72.

OPINION BY MR. JUSTICE MAXEY, March 14, 1932:

This is an automobile collision case and the question before us is: Should the court below have entered judgment for defendant notwithstanding the jury's verdict for the plaintiff in the sum of $2,855? Wissahickon Avenue runs practically north and south, and Rittenhouse Street east and west, in Philadelphia. Each street is thirty feet wide. On a clear dry mid-day on March 9, 1930, the plaintiff, accompanied by his wife and a friend, was driving a Ford sedan south on Wissahickon Avenue toward Rittenhouse Street, and the defendant, accompanied by his wife and cousin, was driving on the latter street westward toward Wissahickon Avenue. Plaintiff testified that when he was about ninety feet from the intersection and driving at a speed of from 20 to 25 miles an hour, he looked to his left and saw defendant's car on Rittenhouse Street one hundred and fifty feet from the intersection and approaching it at a speed of from 30 to 35 miles an hour. He then looked to the right on Rittenhouse Street and saw no car approaching from that direction. He did not observe defendant's car again until he, the plaintiff, was ten feet from the north side of the intersecting square and the defendant's car was twenty feet from the east side of that square. According to the plaintiff, neither car was reducing its speed at the time they approached the intersection. When plaintiff entered the square a short distance, he noticed defendant's car accelerating its speed and the plaintiff, in order to avoid a collision, swerved his car to the right, i. e., to the north side of Rittenhouse Street. According to the plaintiff's testimony, the front of the defendant's car struck the left front door of plaintiff's car, dented in the door and pinned plaintiff's hand to the steering wheel. Plaintiff's car was pushed further to the right so that it turned almost completely around and faced north, then toppled over. Plaintiff said that defendant's car con-

tinued about forty feet on Rittenhouse Street before coming to a stop after the collision.

A disinterested witness who saw the accident testified that the plaintiff's car went twenty feet after the accident before it toppled over and that defendant's car went one hundred feet before it stopped. Plaintiff's wife testified that when she first saw defendant's car it was two hundred feet from the intersecting square while her husband's car at that instant was one hundred and fifty feet from that square. She estimated the speed of her husband's car to be twenty miles an hour. Her evidence was that her husband's car had reached the square while the defendant's car was twenty-five feet from it. She also testified that the defendant apparently slackened his speed just before reaching the square and then suddenly resumed it. The friend in plaintiff's car gave similar testimony as to defendant's apparent moderation and then resumption of speed as his car neared the square. He estimated the speed of defendant's car, after he apparently slowed down, at from twenty to twenty-five miles an hour. He said that defendant "had been doing more than that before." This witness stated the plaintiff when twenty feet from the intersection was driving his car at a speed of about twenty miles an hour.

The contention of the defendant was that he reached the square when plaintiff was forty feet away from it and that plaintiff crashed into his, defendant's, car after the latter had cleared the second curbline, i. e., the western line of the square. The defendant testified that plaintiff's car came around the corner and that the front of it collided with the right side of defendant's car. However, in considering the motion before us it is not necessary to discuss defendant's testimony, as the plaintiff is entitled on the defendant's motion for judgment n. o. v. to have evidence adduced in his behalf accepted as verity unless it is negatived by incontrovertible physical facts and he is entitled also to all inferences in his

favor which from the evidence is a legitimate deduction: Guilinger v. P. R. R. Co., 304 Pa. 140.

Appellant argues in his paper books as follows: "Here we have a man conscious of the fact that he was nearer the intersection than the defendant and would likely reach it first and realizing that the defendant was 'picking up speed,' nevertheless continuing to assert his technical right when it is clear that a man of ordinary prudence would have taken advantage of his ability to stop in time to avoid the collision."

In the record appears the following questions and answers, the plaintiff being under direct examination: "Q. Where were you when you first noticed the Gardener car picking up speed? A. Why, I was just a little bit over the intersection. Q. The first line of the intersection? A. Yes. Q. Where was he [the defendant] at that time? A. He was just at the intersection, at his first line of the intersection." After stating that each street converging into the square was thirty feet wide, the plaintiff was asked, "We have you at the point of the first line of the intersection, you saw the Gardener car was going to pick up speed, what did you then do?" Plaintiff answered, "I quickly swung my car to the right and went over on the left-hand side of Rittenhouse Street to get out of his road, which would have given him the right of way to come back of me."

We cannot accept appellant's contention that plaintiff's conduct at that time amounted in law to negligence. Being on defendant's right, plaintiff had technically the right of way. While this fact does not, of course, justify a driver possessed of the right of way in forcing his car into an inevitable collision, plaintiff cannot, on the facts as they then appeared to him, be held chargeable with knowledge that a collision was inevitable if he continued on his way. If it appeared to him that his car would reach the intersection first, as he said it so appeared and did, he had a right to assume that the defendant even though going at the rate of

thirty or thirty-five miles an hour, would recognize plaintiff's superior right to the intersection and control the car as a considerate driver would under the circumstances, i. e., apply the brakes and slacken his speed. If the plaintiff after reaching the square saw that the defendant had also reached the square and was in fact "picking up speed" (as the former testified) his act in quickly swinging his car to the right was under the circumstances an act of prudence, and if defendant had showed equal prudence by turning his car to the left the collision would probably have been avoided.

According to the testimony introduced in behalf of the plaintiff (which testimony we must accept in considering the motion for judgment n. o. v.), there is no doubt that the plaintiff and not the defendant had the right of way at the intersection. As Judge KELLER in Lochetta v. Cunningham Cab Co., Inc., 98 Pa. Superior Ct. 4, 6, aptly said: "The car approaching from the left only has the right of way when it arrives at the intersection so far in advance of the car on its right that a reasonably prudent man would be justified in believing that he could clear the intersection of the paths of the two vehicles before the other car arrived there."

In this connection, however, instead of departing from the principle we laid down in Weinberg v. Pavitt et al., 304 Pa. 312, at 322, we reiterate now what we there said: "Motorists about to cross intersections must be highly vigilant and exercise extreme care in avoiding accidents and not merely depend for a 'safe passage' exclusively on some theoretical 'right of way' which they may possess or think they possess. Abstract rights sometimes have to yield to concrete facts."

Testing plaintiff's conduct by this standard of care we cannot say that at the time and place in question his conduct fell short of its requirements—though the case is a close one. The rules of the road have now become so familiar to all motorists and the rule that the driver

on the right has the right of way is so firmly imbedded in individual consciousness that although the driver on the right must be highly vigilant in approaching a crossing and must exercise extreme care to avoid accidents, he still is justified in using as a factor, on which with others to base a judgment as to whether or not he can cross an intersection in safety, the fact that the driver approaching on the left and further away from the intersection than he, presumably knows the rules of the road, will give way to the driver on the right, and will so control his car as to avoid a collision. "Everyone to whom a duty is due has a right to assume that it will be performed. ...... He may go on the assumption that all precautions required by statute or established rule or custom will be taken": 20 R. C. L., section 101, page 117. However, this assumption like many others must yield to the realities of the situation, and, if the car on the left, even though further away from the intersection than the car on the right, approaches the intersection at such a high rate of speed as to make a collision at the intersection likely, should the driver on the right relying on his "right of way" push on, it would be the manifest duty of the latter to yield his "superior right" in the interest of the safety of both motorists and of the public.

Weinberg v. Pavitt, supra, differs from the case now before us in these respects. First, Pavitt, who was in that case held blameless of negligence by the jury under erroneous instructions, did not have the right of way. The other automobile being on Pavitt's right presumably had the superior right to the intersection. Second, in that case the court submitted to the jury the question of the negligence of both motorists. In the case before us the defendant complains because the trial court did not as a matter of law declare the plaintiff guilty of contributory negligence and is asking us to reverse the court below for that reason. We reversed in the Weinberg-Pavitt Case not because the court submitted to the jury

the question of the respective negligence of the two motorists but because the submission was not accompanied by proper instructions. We further said in that case, page 326, "If these issues [of fact] had been presented to the jury under adequate and accurate instructions, we would not order a new trial."

We cannot say as a matter of law that in the case before us the speed at which defendant's car approached the crossing was such as should have made it obvious to the plaintiff as reasonably likely that the car on the left would not stop for the plaintiff to pass and that a collision was therefore inevitable if plaintiff attempted to exercise his right of way. We said in Galliano v. East Penn Electric Co., 303 Pa. 498 at 503 that "having one's car under control means having it under such control that it can be stopped before doing injury to any person in any situation that is reasonably likely to arise under the circumstances." In the case before us the court below was justified in refusing to say as a matter of law that in the situation that presented itself to plaintiff, according to the testimony of himself and his witnesses, a collision appeared reasonably likely unless he stopped his car and yielded his right of way to the defendant.

It is true that the testimony of plaintiff himself was not so favorable to his claim of freedom from contributory negligence as was the testimony of his wife and his companion. Plaintiff did not testify to the defendant's momentary slackening of speed as the defendant neared the intersection, while his wife and his companion did so. If defendant actually slackened his car's speed as it neared the square that fact would if observed by the plaintiff have a tendency to assure him that the defendant was going to stop or at least that he had his car under control. However, while we do not say that even under plaintiff's testimony if it stood alone the court would have been justified in declaring him in law negligent, we do hold that the court in passing on the

motion for judgment n. o. v. was obliged to consider all the testimony offered in behalf of plaintiff's claim. This testimony taken as a whole presented a case for the jury on the question of plaintiff's contributory negligence. Our court held in Giles v. Bennett et al., 298 Pa. 158, 163, that "While it is true the contradictory evidence in this case comes from plaintiff's witness, this at most calls for the application of the rule that if on one part of the plaintiff's testimony or that of a witness he is entitled to go to the jury and on another part he is not, or where different parts of his testimony are inconsistent, it is for the jury to reconcile such conflicting statements and say which shall prevail."

When by reason of conflicting statements the plaintiff's testimony leaves the question of his contributory negligence in doubt, since he has not the burden of proof on that issue, it is for the jury to decide the real facts in relation thereto, notwithstanding the conflict: Cronmuller v. Evening Telegraph, 232 Pa. 14.

In an action of negligence it is plaintiff's duty to make out a case free from contributory negligence. When this is done, the burden of proving such negligence is upon the defendant: Goldberg v. P. R. T. Co., 299 Pa. 79.

"The plaintiff is bound to present a case which discloses that he exercised due care or was free from negligence, or, as it has sometimes been expressed, he must not show that he failed to exercise due care......but he is under no obligation to prove the performance of any particular act by way of precaution against injury. If he succeeds in establishing a prima facie case—that is, one from which it does not appear that he was negligent—the defendant has cast upon him the burden of introducing evidence in rebuttal thereof": 20 R. C. L., section 162, page 196.

If plaintiff in this case failed to exercise due care at the intersection his testimony and that of his witnesses did not show that fact so plainly that the court below could as a matter of law declare him guilty of contribu-

tory negligence. The jury might under the evidence have done so but it did not. The court below submitted the issues of fact to the jury in a careful, accurate charge. The jury took the view of the testimony most favorable to the plaintiff. On a motion for judgment n. o. v. the court below also had to take that view. Under this view, the plaintiff was not guilty of contributory negligence.

The judgment is affirmed.