Cochran et ux. *v.* P. C. C. & St. L. R. R. Co.

Argued April 25, 1933.

Before TREXLER, P. J., KELLER, CUNNING-HAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

412

*Charles G. Notari* of *Marshall, Braun and Notari,* for appellant, cited: Giles v. Bennett, 298 Pa. 158; Nanty-Glo Borough v. American Surety Co., 309 Pa. 236; Kennelly v. Waropoyak, 266 Pa. 94.

*Robert D. Dalzell* of *Dalzell, Dalzell, McFall & Pringle,* for appellee.—Where a plaintiff's testimony is uncertain so that the facts can only be arrived at by a guess there is no question of fact to be submitted to a jury: Mulligan v. Lehigh Traction Co., 241 Pa. 139; Magier v. P. & R. Ry. Co., 257 Pa. 383; Zenzil v. D. L. & W. R. R. Co., 257 Pa. 473.

OPINION BY JAMES, J., November 17, 1933:

The plaintiff husband and the plaintiff wife, appellants, took separate appeals which were argued at the same time and both appeals are disposed of in this opinion.

On March 22, 1924 and for some time previous, the plaintiffs were living at Cubbage Hill, a community in the vicinity of Carnegie, Pennsylvania. The inhabitants of this community were obliged to cross the tracks of the defendant company to reach the Borough of Carnegie. This is a permissive crossing, solely for pedestrians, it being used by all of the people in that community. It is known as the "Lincoln Crossing" or the "Grant Mine Crossing," is a continuation of Lincoln Street on Cubbage Hill and traverses the tracks

from Eighth Avenue to West Main Street in Carnegie. The exact point where Lincoln Street or Eighth Avenue ended and the railroad right of way began is not disclosed by the record although a crossing signal was located between the bridge and the railroad tracks. From Eighth Avenue to the railroad tracks the street was unimproved. Some time previous to March 22, 1924, the defendant's servants had dug a ditch at right angles to Lincoln Street about 25 feet from the railroad tracks and placed thereon a door from a mine car to be used as a bridge by pedestrians.

On the evening of March 22, 1924, Mrs. Elizabeth Cochran was returning to her home in Cubbage Hill from Carnegie and while passing over this bridge her foot broke through the wood and she sustained the personal injuries for which this suit was brought.

At the time of the accident she was accompanied by two witnesses who corroborated her in that as they passed over the bridge there was no hole and that suddenly they heard the cracking of the wood and saw that Mrs. Cochran had fallen into the hole. These two witnesses testified that on the following morning they saw that the wood which had broken off was rotten.

The testimony of the witnesses established that the trench was two or three feet deep and about three feet wide and that it was necessary for some sort of structure to be placed there in order to cross over the ditch that had been dug.

William H. Cochran, husband of the woman, testified that the trench was dug in the Fall of 1923 and although there are some contradictions in his testimony as to whether the bridge was placed across the ditch in February of 1923 or the Fall of 1923, his testimony shows that the trench was dug by the employees of the company and the improvised bridge placed across it at least six months or a year previous to the date of the accident.

Jacob Woyner and August Dorn, witnesses for the

plaintiff, testified that the ditch was dug in the Fall of 1923 and that there was no ditch before that time nor was there a bridge before that time; that they had seen the mine car door or tipple door lying on the ground near the place where the trench was dug for about a year. Jacob Woyner testified as follows: (p. 59a) "Q. When you say 'it was like rotten' what was that? A. That was like they put it down. Q. Do you mean to say when they put it down it was like rotten? A. Yes, it looked like rotten. Q. These cracks on the edge there, how long were they there, do you know? A. That would be the same time. Q. Do you see these cracks on the end of the wood?" The Court: "That is the end toward the railroad track? A. Yes." Mr. Notari: "Q. How long had they been there, do you know? A. Right away they put down this wood because it laid on the side and it was like rotten before they put it on." August Dorn testified (p. 67a) that he had observed the mine car door lying on the side about a year before and further testified (p. 69a): "Q. You don't know how long it was on there as a bridge? A. It was decayed on the edges before it was put on the trench."

When Stanley Magurski, another witness for plaintiffs, was called, counsel for defendant suggested that an offer be made at side bar, after which counsel for plaintiffs stated (p. 70a): "It is of the same nature as of the previous witness about the board lying on the side and its condition when it was put on." Mr. Dalzell (for defendant): "I will say I intend to offer no testimony to contradict that testimony that has already been offered." Mr. Notari (for plaintiffs): "And that it was old and rotten?" Mr. Dalzell: "That is right." This witness testified (p. 70a) that before the trench was dug, after each heavy rain, dirt, slag and soil would go down on the railroad track.

No testimony was offered by the defendant. A point for binding instructions was submitted which was re-

fused and the jury rendered a verdict in favor of the plaintiffs. Defendant moved for judgment non obstante veredicto which was granted by the court below, from which order these appeals were taken.

In the opinion of the learned court below, it stated, "The testimony as to the placing of the door, its condition when it was placed, and the time when it was placed was so vague and indefinite, that the jury would be guessing in considering such testimony for the purpose of determining the liability." With this we can not agree as the testimony of the plaintiffs' witnesses, if believed, established that across this street, adjacent to the permissive crossing, the defendant's employees had dug a trench for the convenience and benefit of the railroad company either in February, 1923 or in the Fall of 1923 and that the mine car door was in a rotten condition when it was placed there by the employees of the company. In order to bind the defendant, it was not necessary for the plaintiffs to establish the exact date or the month when the bridge was placed there by the defendant's employees. As long as the bridge was being used by those who had a lawful right to travel along the route between West Main Street in Carnegie to Eighth Avenue over the Lincoln Street crossing, it was the duty of the railroad company to maintain it.

The court below in its opinion set forth the following: "It was out in the open, subject to the elements and to anything else that might have weakened its condition, but there is nothing positive in plaintiffs' testimony that Mrs. Cochran went through it because of its condition at the time it was placed in position. If the accident had happened the same day or within a reasonable time after the door had been placed, and there had been positive testimony of its rotten condition when it was put in position, it could be inferred that its original rotten condition was insufficient to carry plaintiff's weight." If it was the duty on the

part of the defendant to place a proper bridge across this trench when it was first placed there, that duty continued until the final abandonment of the use of the trench on the part of the railroad company. If it was in a good condition at the time of its placement, subject to the elements, the railroad company would be bound to know that in process of time it would deteriorate.

Having made use of the street or roadway for the advantage and benefit of the railroad company it was incumbent upon them to maintain a safe way for pedestrians along this so-called street and the testimony of plaintiffs' witnesses that at the time the bridge was placed the car door was in a rotten condition and that it was rotten at the time the accident happened, was sufficient testimony upon which the jury could base its verdict. There was some contradiction in the testimony of the various witnesses as to the date when the bridge was placed across the trench and as to its condition but these contradictions were not of such a character as would destroy the effect of the testimony of the witnesses that the trench had been dug by the railroad employees, that the bridge had been placed across the trench, that the board was rotten when placed, and was rotten at the time of the accident.

"It is a well-established rule that, when different parts of either the plaintiff's or defendant's testimony are apparently inconsistent, leaving it uncertain just what is the truth as to the facts, it is the province of the jury to reconcile the conflicting statements, if possible, and to decide which shall prevail. The court, as a matter of law, can not adopt the one favorable to defendant and direct a non suit, or enter a judgment n. o. v.": Kennelly v. Waropoyak, 266 Pa. 94, 96, 109 A. 608. And as was said by Mr. Justice FRAZER in Giles v. Bennett, 298 Pa. 158, 148 A. 90, "While it is true the contradictory evidence in this case comes from plaintiff's witness, this at most calls for the application of

the rule that if on one part of the plaintiff's testimony or that of a witness he is entitled to go to the jury and on another part he is not, or where different parts of his testimony are inconsistent, it is for the jury to reconcile such conflicting statements and say which shall prevail.''

It may be true that the testimony did not establish clearly that the point between the junction of Eighth Avenue and Lincoln Street and the railroad right of way was such a public street as to require the municipality to maintain and repair it but it did show that the route was generally used by the inhabitants of Cubbage Hill to cross the railroad tracks to the Borough of Carnegie. We find no direct authority but believe the principle that, ''No person not even the adjoining owner, whether the fee of the street be in himself, or in the public, has the right to do any act which renders the use of the street hazardous or less secure than it was left by the municipal authorities,'' should apply. See Dillon on Municipal Corporations, 5th Ed., Sec. 1725.

''The public have the right to the use of the street in the condition in which the municipality has left it, and no person whether an adjoining owner or not is justified in placing or permitting an obstruction thereon which renders it dangerous or insecure.'' Brown v. White, 202 Pa. 297, 51 A. 962; Beatty v. Gilmore, 16 Pa. 463; Dickson v. Hollister, 123 Pa. 421, 16 A. 484.

The railroad company was under no duty to maintain and care for the street beyond its right of way but having undertaken to make use of it, it would be liable for negligence in its performance. See Gates v. P. R. R. Co., 150 Pa. 50, 24 A. 638.

Where an owner of land through which a public road passed, cut a passage across the road for the purpose of draining his land or leading water to his mill, the court held that he was not only bound to construct bridges over the ditches where they crossed the

highway but also to keep them in repair and that the duty of keeping the bridges in repair is as imperative as the original obligation to construct them because he erected them for his own benefit. Woodring v. Forks Twp., 28 Pa. 355.

In the case at bar, the defendant constructed the bridge over the drain or ditch for its own benefit and advantage and it was its duty to properly maintain it. Under all the testimony, we are of the opinion that the case was properly a case for the jury and that the court erred in entering judgment n. o. v.

The judgment to No. 94, April Term, 1933 is reversed and is now ordered to be entered for the plaintiff on the verdict on payment of the jury fee; the judgment to No. 95, April Term, 1933 is reversed and is now ordered to be entered for the plaintiff on the verdict on payment of the jury fee.

KELLER, J., dissents.